Eckert *v.* Louis *et al.*

---

No. 8917.

ECKERT *v.* LOUIS ET AL.

PROMISSORY NOTE.—*Material Alteration.—Spoliation.*—The material altera-tion of a promissory note by a stranger is a mere spoliation of the in-strument, and the rights and liabilities òf the parties thereto are not changed or affected by such alteration.

SAME.—*Alteration after Execution.—Presumption.—Burden of Proof.*—When once it appears that the note was altered after its execution, the presump-tion arises and will continue until the contrary is shown, that such al-teration was made by the holder or by one under whom he claims, and the burden of rebutting and removing or overcoming such presumption is on such holder.

SAME.—*Payee and Principal.—Release of Surety.*—Where it is shown that the agent of the payees of certain promissory notes, which, when executed,. were in legal effect the joint and several notes of the principal and surety,. so altered the same with the principal's consent, but in the absence and without the knowledge or consent of the surety, as to make them the joint notes of the makers thereof, such alteration was material, and vitia-ted and avoided the notes as against such surety, and discharged and released him from any and all liability thereon.

From the Superior Court of Allen County.

*W. H. Coombs, J. Morris* and *R. C. Bell,* for appellant.

*W. H. Withers* and *W. P. Breen,* for appellees.

Howk, J.—This was a suit by the appellees, as the payees, against the appellant, as one of the makers, of two promissory notes. These notes were each in the sum of $150, were each dated March 24th, 1879, were each executed by one Victor Jacobson and the appellant, and were payable respectively in sixty and seventy-five days to the order of the appellees, by their firm name of A. Louis & Co. The cause was put at issue and tried by the court, and a finding was made for the appellees for the amount of the notes and interest, and over the appellant's motion for a new trial, and his exception saved, judgment was rendered on the finding.

The appellant has assigned as error the overruling of his motion for a new trial. In this motion the causes assigned for such new trial were, that the finding of the court was not sustained by sufficient evidence, and was contrary to law. It is conceded by the counsel of both the appellant and the appellees, that the evidence of the witness Solomon Frost contains the material facts upon which the decision of the cause must rest. This evidence was in substance as follows:

" I am a book-keeper in the employ of the plaintiffs, and have been for five years; the plaintiffs, as well as myself, reside in Chicago; on the night of the 23d of March, 1879, I came to Fort Wayne, at the direction or the order of the plaintiffs, to collect or secure a claim they then held against Victor Jacobson; my orders were not to leave Fort Wayne until I had collected the money or obtained undoubted security for the payment of the claim; I called upon Jacobson on the morning of the 24th of March, 1879, and stated to Jacobson what the plaintiffs had ordered me to do in the matter; Jacobson stated to me that he had no money, and I then requested him to give such security as the plaintiffs had ordered me to obtain; after some talk about the matter, he agreed to furnish such security as was required, and I thereupon drew up the notes sued upon; Jacobson took the notes as drawn up by me, went out of the store, was gone for some time, and returned with the notes signed by himself and the defendant Eckert;

I took the defendant Eckert's name on a slip of paper, went out of the store, made enquiry as to the solvency of Eckert, returned and informed Jacobson that his security was satisfactory, and thereafter he delivered to me the notes; I receipted a statement of the account which I had with me, and showed it to Jacobson; placed the notes delivered to me by him in my pocket; Jacobson and myself sat in the store talking for some little time, say between half and three-quarters of an hour, talking about business and other matters; when, to assure myself that I had done the business as I was ordered, I took the envelope out of my pocket and read over the notes; I then noticed that the notes read 'I promise to pay,' and were signed by both Jacobson and Eckert; this did not seem to me to be grammatical, and I told Jacobson that he should take the notes back and have Eckert sign his name on the back; to this he objected, on the ground that he had troubled Eckert sufficiently already, and did not wish to do so any more, and suggested that I should make the alteration, that is, substitute the word 'we' in place of the word 'I;' I told him I supposed it would make no difference as long as he was satisfied, and accordingly made the alteration, and thereupon wrote the word 'we' over the letter 'I;' this was the first and only time that I had or have been sent out by the plaintiffs to collect or secure claims against their customers.

"In making the change above referred to I had no intent to change or in any way alter the liabilities of the parties making the notes; nor did I intend to in any way change or alter or interfere with the rights of the plaintiffs as to their contract made with Jacobson and the defendant; my sole effort and desire were to obey strictly the orders of the plaintiffs, which were, as I have stated, to collect their debt against Jacobson, or procure from him undoubted security."

The alteration of the notes in suit was a material alteration. As executed, the notes were, in legal effect, the joint and several notes of the makers; as altered, they became their joint notes. Thus, in Daniel's Negotiable Instruments, sec-

tion 1373, it is said : "Any change in the terms of a written contract which varies its original legal effect and operation, whether in respect to the obligation it imports, or to its force as matter of evidence, when made by any party to the contract, is an alteration thereof, unless all the other parties to the contract gave their express or implied consent to such change. And the effect of such alteration is to nullify and destroy the altered instrument as a legal obligation."

The alteration of the notes sued upon was made by the appellees' book-keeper, in the absence and without the knowledge or consent of the appellant, who was the surety of the other maker of the notes. It is claimed, however, by appellees' counsel in argument, that the following propositions are established by, or may be fairly deduced from, the above quoted evidence of the witness Frost :

" 1. That Frost was the special agent of the plaintiffs, appointed to do a certain thing : receive the notes as executed by Jacobson and the defendant to the plaintiffs, and carry them to his principals.

" 2. That the alteration was made by Frost, without authority from the plaintiffs, without their knowledge or consent, after he had ceased to be their agent in and about the procuring of the notes; and the plaintiffs, having in no way ratified or approved the act of Frost, the alteration is in no way binding upon them.

" 3. That when the alteration was made by Frost he was a *stranger* to the contract made between the parties, and the alteration made by him was a mere *spoliation* of the notes."

If these propositions are sustained by or may be fairly inferred from the evidence in the record, the alteration of the notes in suit by a stranger thereto is a mere spoliation of the notes, and the rights and liabilities of the parties are not changed or affected thereby. *Piersol* v. *Grimes*, 30 Ind. 129 ; *Cochran* v. *Nebeker*, 48 Ind. 459 ; *Bucklen* v. *Huff*, 53 Ind. 474.

We are of the opinion, however, that the propositions quoted

are not sustained by, nor can they be fairly inferred from, the evidence of the witness Frost, or any other evidence in the record. Frost was and had been, for several years prior to the date of the notes in suit, the general agent and book-keeper of the appellees. Certainly, there is nothing in the evidence tending to show that he was the special agent of the appellees for the procurement, receipt and carriage of the notes to the appellees; on the contrary, Frost testified that he was, and had been for five years, the book-keeper of the appellees. As such book-keeper, and not under any special employment, so far as is shown, Frost was ordered by the appellees to go to Fort Wayne and collect or secure their claim against Victor Jacobson. Nor did the evidence in this case show, or tend to show, that the alteration of the notes sued upon was made by Frost, without authority from the appellees, without their knowledge or consent, after he had ceased to be their agent in and about the procurement, receipt and carriage of the notes; nor did it appear that the appellees had in no way ratified or approved of the act of Frost, in the alteration of the notes. When once it appeared that the notes in suit were altered after their execution, the presumption arose, and would continue until the contrary was shown, that the alteration was made by the appellees, or by one under whom they claimed. *Cochran* v. *Nebeker, supra.* The burden of rebutting and removing or overcoming this presumption was, of course, on the appellees.

The evidence wholly failed to show, as it seems to us, that, when the alteration of the notes was made by Frost, he was a *stranger*, in the legal sense of the word, to the contract of the parties evidenced by the notes. On the contrary, the evidence showed that Frost was, and had been for several years, the confidential agent of the appellees; that, as such agent, he " drew up the notes sued upon;" that, after these notes were signed by the appellant and Jacobson, they were delivered to and received by Frost, as the agent of the appellees; that, as

such agent, Frost receipted the appellees' account against Jacobson, and placed the notes in his pocket; that, within three-quarters of an hour afterwards, Frost, as such agent, read over the notes, which he had drawn a short time before, on the same day, and *then* noticed that they were not, as he thought, *grammatical;* and that, as such agent, he made the alteration in the notes, in the presence and with the consent of Jacobson, but in the absence and without the knowledge or consent of the appellant Eckert, the surety in the notes.

The alteration of the notes sued upon was not made by a stranger, and, therefore, was not a mere spoliation of the notes. It was a material alteration, made by the agent of the appellees, and without the authority, express or implied, of the appellant, and, as against him, it vitiated and avoided the notes. Eckert could well say that the notes sued upon he did not execute, and that the notes which he executed were destroyed by the alteration thereof, and the notes in suit were substituted therefor, without his authority, knowledge or consent. *Fay* v. *Smith,* 1 Allen, 477; *Holland* v. *Hatch,* 11 Ind. 497; *Schnewind* v. *Hacket,* 54 Ind. 248; *Coburn* v. *Webb,* 56 Ind. 96 (26 Am. R. 15); *Franklin Life Ins. Co.* v. *Courtney,* 60 Ind. 134; *Collier* v. *Waugh,* 64 Ind. 456; *McCoy* v. *Lockwood,* 71 Ind. 319; *Dietz* v. *Harder,* 72 Ind. 208; *Johnston* v. *May,* 76 Ind. 293; *Bowman* v. *Mitchell,* 79 Ind. 84.

For the reasons given, the court erred, we think, in over-ruling the appellant's motion for a new trial.

The judgment is reversed, with costs, and the cause is remanded with instructions to sustain the motion for a new trial, and for further proceedings not inconsistent with this opinion.