COBURN v. WEBB.

PROMISSORY NOTE.—*Blanks.—Alteration.—Principal and Agent.*—Where a promissory note, left blank as to a material stipulation, is entrusted by the maker to another to negotiate, the latter has authority to fill such blank, but not to alter a material stipulation not left blank.

SAME.—*Material Alteration.*—When, in such case, such instrument is negotiated to a person having notice that it has been so altered in a material part, he can not hold the maker liable, even though by such alteration the burden of the maker be lessened.

SAME.—A promissory note, left blank as to some material parts, but perfect as to the stipulation for the payment of interest from its date, was entrusted by one maker thereof to another, to negotiate for the benefit of the latter, who, having filled such blanks and altered such interest stipulation by adding thereto the words "after maturity," negotiated the same to a person having knowledge of such alteration.

*Held,* in an action upon such note, by such holder, against such first mentioned maker, that, by such alteration, the latter is discharged from all liability thereon.

SAME.—*Practice.—Evidence.*—Under a verified denial of the execution of an instrument sued upon, the defendant may introduce evidence that such instrument had been altered in a material stipulation since its execution.

From the Madison Circuit Court.

*J. W. Sansberry, E. B. Goodykoonts, R. Lake* and *W. March,* for appellant.

*H. D. Thompson,* for appellee.

WORDEN, J.—Action by Webb, the appellee, as the payee, against the makers, of the following promissory note:

"$672.00.                              July 29th, 1870.

" Twelve months after date, we promise to pay to Minor Webb, or order, six hundred and seventy-two dollars, with interest at ten per cent. per annum, after maturity, value received, without any relief whatever from valuation or appraisement laws.

(Signed)   .                              " JOHN NELSON,
                                          " WEEMS HEAGY,
                                          " JOHN COBURN."

Nelson pleaded his discharge in bankruptcy, and Heagy made default. As to these defendants, no question is made here.

Coburn answered as follows :

"Now comes John Coburn, one of the defendants in the above entitled cause, and, for answer for himself alone, says, that he never executed the note sued on, either by his own signature, or by authority given to any other person to sign for him; nor has he ever affixed, in any manner whatever, the said signature; and that the said note is not his act or deed. Wherefore he asks judgment," etc.

This answer was duly verified.

The cause was submitted to the court for trial, and there was a finding and judgment for the plaintiff, a motion by Coburn for a new trial having been overruled.

Coburn alone appeals.

On the trial there was some conflict in the evidence in respect to the genuineness of Coburn's signature to the note, but in this respect the finding was in accordance with what seems to us to have been the preponderance of the evidence.

But there is another point, in respect to which we are of opinion that the finding was wrong.

Assuming that Coburn's signature to the note is genuine, the material facts in the case, as shown by the evidence, were as follows :

Nelson was desirous of using means, and with a view to raising them, signed, and procured Heagy and Coburn to sign with him, a blank note of the following tenor, etc. :

"$————.                                    ———— —, 186 .

"———————— after date, — promise to pay ————
or order ———————— dollars, with interest at ten per

cent. per annum, value received, without any relief what-
ever from valuation or appraisement laws.

> " JOHN NELSON.
> " WEEMS HEAGY.
> " JOHN COBURN."

The skeleton note thus signed, Nelson negotiated to
the plaintiff, Webb, for value, and so filled it up as to make
the note first hereinbefore set out. Nelson, in his testi-
mony, said :

"I filled up the note, in Mr. Webb's house, on the day
it was dated; did all the writing except the names; did
it in Mr. Webb's presence. Before I filled the note in
writing, it was printed in blank, signed by myself, Heagy
and Coburn, in words and figures, as follows."

Then follows the skeleton above set out.

It will be seen that the note, as filled up, contains the
words "after maturity," following the stipulation to pay
"interest at ten per cent. per annum;" and that those words
were not contained in the blank signed by the parties,
nor was any blank space left for the insertion of such or
the like words. The words "after maturity," therefore,
must have been inserted by Nelson at the time he filled
up the blank, as stated by him.

It is not questioned, nor can there be any doubt, that
when Heagy and Coburn signed the note thus in blank,
and entrusted it to Nelson, they authorized the filling up
of the note as to the proper date, the name of the payee,
the time of payment and the amount. In these respects
the note, as signed, was blank; and the authorities are
abundantly clear, that Nelson had implied authority to fill
up the blanks.

It was said by the Supreme Court of the United States,
in the case of *The Bank of Pittsburgh* v. *Neal*, 22 How. U.
S. 96–107, that, "Where a party to a negotiable instru-
ment intrusts it to the custody of another, with blanks
not filled up, whether it be for the purpose to accommo-
date the person to whom it was intrusted, or to be used

for his own benefit, such negotiable instrument carries on its face an implied authority to fill up the blanks and perfect the instrument; and as between such party and innocent third parties, the person to whom it was so intrusted must be deemed the agent of the party who committed such instrument to his custody—or, in other words, it is the act of the principal, and he is bound by it."

The authorities upon this point are numerous, extending from the time of the decision in *Russel* v. *Langstaffe*, 2 Doug. 514, down to the present time.

But we find no authority, which we are content to follow, sustaining the proposition that a party, to whom a note has been thus entrusted by others who had signed it, has any authority whatever to change or alter it in those respects in which it is complete and perfect at the time it is thus signed and entrusted to him. Nelson, in this case, had the authority to fill up the note, by inserting the proper date, the name of the payee, the time of payment and amount, because, in these respects, the note, as signed and entrusted to him, was blank; but he had no authority to change or alter the stipulation as to the payment of interest, because, in that respect, the note was not blank, but complete and perfect. The case stands precisely as it would, if the note, when signed by Heagy and Coburn and entrusted to Nelson, had been in all respects complete and perfect as it was afterwards filled up, except the words " after maturity," and Nelson had afterwards inserted those words as they now appear in the note.

The words " after maturity " having been inserted without authority from Coburn, the question arises, whether their insertion destroys the note as to him, by rendering it a different instrument from that signed by him. It may be here observed, that as the words were inserted in the note at Webb's house, and in his presence, we may fairly infer he was cognizant of the fact; and, therefore, we need not decide what effect their insertion would have had upon his rights, if he had been ignorant of the fact.

We are of opinion that the insertion of the words indicated destroyed the note as to Coburn, because they changed, in a material matter, the legal effect of the note as signed by him. The legal operation of the note, as signed by Coburn, entitled the holder to interest from the date of the note; but it was so changed, by the insertion of the words indicated, as not to bear interest until the maturity thereof. This change of the note did not, perhaps, operate to the prejudice of Coburn. But that is not the legal criterion by which to determine whether an alteration of a note destroys it.

The question is, is the note sued upon the same note, in legal effect, as that signed by Coburn? If the alteration made the note a different one in legal effect, then it is not Coburn's note, and he is not bound by it. These views are fully sustained by the current of authorities in this State and elsewhere. 2 Daniel on Negotiable Instr., pp. 339 to 349; *Holland* v. *Hatch*, 11 Ind. 497; *Henry* v. *Coats*, 17 Ind. 161; *Bowers' Adm'r* v. *Briggs*, 20 Ind. 139; *Judah* v. *Zimmerman*, 22 Ind. 388; *Schnewind* v. *Hacket*, 54 Ind. 248; *Chappell* v. *Spencer*, 23 Barb. 584.

The case last cited contains a valuable collection of the authorities upon the point.

The question is made by counsel for the appellee, whether the answer of Coburn puts in issue any thing more than the genuineness of his signature to the note sued on.

We are of opinion, however, that the answer is broad enough to put in issue the execution by him of the note as sued upon. He may have signed the note in its original form, and yet not have executed the note sued upon, the alteration making it a different note from that signed by him.

The judgment below, against the appellant, is reversed, with costs, and the cause remanded for a new trial.