No. 6825.

DIETZ ET AL. *v.* HARDER ET AL.

PROMISSORY NOTE.—*Material Alteration Avoids.*—A material alteration of a note or bill, without authority express or implied, will avoid it as to previous parties not consenting thereto.

From the Marion Superior Court.

*N. B. Taylor, F. Rand* and *E. Taylor*, for appellants.
*P. Rappaport*, for appellees.

HOWK, J.—In this action, the appellants sued the appellees upon five promissory notes alleged to have been executed by the appellee Harder, as maker, and the appellee Werther, as endorser before delivery, to the order of the appellants. After the cause had been put at issue, it was tried by the court, at special term; and, at the appellees' request, the court made a special finding of the facts of the case, and of its conclusions of law thereon, in substance, as follows:

"On March 15th, 1876, the defendant Harder, as principal, and defendant Werther, as his surety, in consideration of the sale of a stock of boots and shoes by plaintiffs to said Harder, executed to plaintiffs six promissory notes, the first of which was in the words and figures following, viz.:

"'$233.33.        INDIANAPOLIS, March 15th, 1876.

"'Thirty days after date, I promise to pay to the order of Dietz & Reissner, negotiable and payable at Ritzinger's Bank, Indianapolis, Indiana, two hundred and thirty-three and $\frac{33}{100}$ dollars, with ten per cent. interest after maturity, (and reasonable attorneys' fees, if suit be instituted on this note.) Value received, without any relief whatever from valuation or appraisement laws. The drawers and endorsers severally waive presentment for payment, protest, and notice of protest and non-payment of this note.

(Signed)                    "'ADOLPH HARDER.'
"Endorsed: 'Wm. Werther.'

"The second, third, fourth, fifth and sixth notes were of the same tenor as the first, except that.they were made payable respectively in sixty days, ninety days, four months, five months, and six months after date, and that the second note was for the sum of $234.20. All of the notes were upon ordinary printed blank forms, the words 'after maturity' being printed in each. At the time of the sale, it was understood by the plaintiffs, but not by the defendants, that the notes, to be executed in consideration thereof, should draw interest from date. Before the delivery, Reissner had a conversation with Harder, from which Reissner understood that an arrangement was about to be made, by which all the notes would be paid within thirty days from date. Immediately after the delivery of the notes to Reissner, he, in company with Harder and one Babb, went to the office of plaintiffs, and gave them into the possession of the plaintiff Dietz.

"Dietz did not then notice that the notes did not draw interest from date, but in a few minutes afterward he examined the notes, and, finding such to be the fact, he immediately went to a saloon near by, where he found Reissner; Harder and Babb were standing together by the counter; as soon as Dietz entered the saloon he said in an audible voice, loud enough to be heard all over the room, 'There is no interest in these notes;' Reissner replied in a like audible voice, 'that the goods were to be sold right away, and, if the notes were paid inside of thirty days, they were not to draw any interest; if not paid within that time they were to draw interest.' At the time Dietz was speaking, he had the notes in his hand. Dietz and Reissner both supposed that Harder heard what had been said, and assented to it; and Dietz, believing that this was the mutual understanding, immediately left, taking the notes with him. But, in fact, Harder's attention was otherwise engaged at the time Dietz and Reissner

were talking, and he did not hear what either of them said; the defendant, Werther was not present. The first note was paid at maturity; shortly after the maturity of the first note, the others being unpaid, Reissner altered each of the remaining notes (the second, third, fourth, fifth and sixth, which are the notes sued on), by drawing through the printed word '*after maturity*,' a pen making ink-marks.

"He did this with the intention of erasing these words; but, notwithstanding the marks so made, the words 'after maturity' were still plainly visible, so that any person, by looking at the notes, could and can see, not only the ink-marks, but also the printed words which the ink-marks were designed to erase. Reissner made these erasures without consulting with the defendants, or either of them; nor did either of them know any thing about such erasures until after the maturity of the second note. As soon as they discovered that such erasures had been made, they disapproved of them, and refused to be longer bound by the notes. Neither did the plaintiff Dietz know any thing about such erasures until after the maturity of the second note.

"When Reissner made these erasures, he did so without any fraudulent intent and in entire good faith, believing that by so doing he was making the notes to correspond with what he understood to be the mutual understanding of all parties, plaintiffs and defendants. He had no knowledge, information or belief, until after the maturity of the second note and the refusal of the defendants to pay, that the notes as altered did not correspond with their understanding in reference to them. The second, third, fourth, fifth and sixth notes are all still due and unpaid, the principal and interest amounting to $1,298.75.

"The notes, as they were after alteration, are the notes sued on in the first, second, third, fourth and fifth paragraphs of the complaint; and the notes, as they were prior to such alteration, are the notes sued on in the sixth, sev-

Dietz *et al. v.* Harder *et al.*

enth, eighth, ninth and tenth paragraphs of the complaint.''

Upon the foregoing special finding of facts the court at first found the following conclusions of law :

"*First*.   That the alteration of said notes by the plaintiff Reissner should be regarded as a nullity, not affecting the rights of either the plaintiffs or the defendants, the same as if made by mistake, or by a stranger ;

"*Second*.   That the plaintiffs ought not to recover anything against either of the defendants upon the several causes of action set forth in the first, second, third, fourth and fifth paragraphs of the complaint ;

"*Third*.   That the plaintiffs ought to recover against the defendant Harder as principal, and the defendant Werther as his surety, upon the several causes of action set forth in the sixth, seventh, eighth, ninth and tenth paragraphs of the complaint, the sum of twelve hundred and ninety-eight dollars and seventy-five cents, ($1,298.75) with interest thereon at the rate of ten per cent. per annum from the date of this judgment, collectible without any relief from valuation or appraisement laws.''

To which conclusions of law the appellees excepted.   Three days afterward the court sustained the appellees' exceptions, and set aside its conclusions of law ; and, in lieu thereof, the court then found upon its special finding of facts, as a conclusion of law, that the facts so found were not sufficient to constitute a cause of action in favor of the appellants and against the appellees, or either of them.   To which conclusions of law the appellants excepted, and over such exception the court rendered judgment for the appellees, the defendants below, for their costs.   On appeal, this judgment was in all things affirmed by the court in general term.

In this court the only question for decision is this :   Did the court at special term err in its second and final conclusion of law upon the facts specially found?   We are of the

opinion that this question must be answered in the negative under the decisions of this court. As long ago as the case of *Holland* v. *Hatch*, 11 Ind. 497, the point was made that an alleged alteration of a bill of exchange, then in suit, was a mere excess of authority, and would not vitiate the bill, and that the bill might be treated as valid, as though no alteration had been made. But the point was overruled, and it was said by WORDEN, J., speaking for the court, that "It is abundantly settled, that a material alteration in a note or bill, avoids it as to previous parties not consenting to the alteration."

This question was again considered by this court in the more recent case of *Schnewind* v. *Hacket*, 54 Ind. 248. In that case the precise point was made by the appellant that is now made by the appellants in the case at bar, and was supported by some of the same authorities which are now relied upon for the reversal of the judgment. The point thus made was, that the alteration of the note in suit, although material, was innocent on the part of the appellants, and had not affected the rights of the makers of the note; and that, therefore, if not bound by the note as it is, the makers were bound by it as it was before alteration. But the point was overruled on the authority of *Holland* v. *Hatch*, *supra*, wherein it was held, in substance, that the court was not authorized to hold the notes void, so far as the alteration was concerned, and valid as to the remainder. The cases cited are, we think, decisive of the questions in the case now before us. Whatever may be the law elsewhere, and it must be conceded that there is much conflict in the decisions of the courts of other states on the point now under consideration, we are of the opinion, that a material alteration of a note or bill, without authority express or implied, will avoid it as to previous parties not consenting thereto. This is the law, as recognized and acted upon in this court, and we think it is the better law. *Coburn* v.

*Webb*, 56 Ind. 96; *The Franklin L. Ins. Co.* v. *Courtney*, 60 Ind. 134; *Collier* v. *Waugh*, 64 Ind. 456. We find no error in the record.

The judgment is affirmed, at the appellants' costs.