[No. 10664.  Department One.  December 6, 1912.]

JOHN T. HANDSAKER *et al.*, *Appellants*, v. HANS PEDERSEN, *Respondent*, AND FRED J. EITEL *et al.*, *Appellants*.[1]

BILLS AND NOTES—EXECUTION—PRINCIPAL MAKERS—EVIDENCE—SUFFICIENCY. There is sufficient evidence that notes, signed by the defendants in the left hand corner, after they had been signed by others and indorsed for discount, were executed by defendants as principals and not as sureties, where a bank had refused to discount the notes, and only did so on the strength of the signatures of the defendants, who signed and put up collateral for the purpose of getting the notes discounted.

ALTERATION OF INSTRUMENTS—CONSENT TO ALTERATION—AUTHORITY OF JOINT MAKER. One of two accommodation indorsers of a note is not the agent of the other for the purpose of procuring its discount with authority to consent to a material alteration, where they were not partners and had no interest in and derived no benefit from the note or its discount.

SAME—MATERIAL ALTERATION—NEW SIGNERS. Under Rem. & Bal. Code, § 3515, providing that an alteration that changes the number or the relation of the parties is a material alteration, the addition of new signatures to procure their discount is a material alteration, which discharges an accommodation indorser who had no notice of the alteration.

SAME—CONSENT TO ALTERATION—EFFECT. An accommodation indorser who assents to the alteration of a note by the addition of new signers is liable on the note for his contributory share thereof.

INDEMNITY—LIABILITY OF INDORSERS—ORAL PROMISE. An accommodation indorser who orally promised an accommodation signer to pay the note in any event and save such party harmless thereon, is liable on his promise.

EVIDENCE—ORAL EVIDENCE—TO VARY WRITTEN CONTRACT. Proof of an oral promise by an accommodation indorser to pay the note and save another harmless is not inadmissible as varying the written obligation.

FRAUDS, STATUTE OF—DEBT OF ANOTHER—INDEPENDENT PROMISE. An oral promise by an accommodation indorser to pay the note in any event and save another harmless is not a promise to pay the debt of another, within the statute of frauds, but is an independent personal promise.

[1]Reported in 128 Pac. 230.

INDEMNITY—ACTION ON GUARANTY—SCOPE—ATTORNEY'S FEES PAID WITHOUT SUIT. An action by accommodation signers, against an indorser who had agreed to pay the note in any event and save the plaintiffs harmless, is upon the promise and not upon the note, and no recovery can be had for the attorney's fee stipulated for in the note, where the plaintiffs had paid the note without suit or costs.

INDEMNITY — ACTION ON GUARANTY—DEFENSES. In an action against an accommodation indorser upon the promise to pay the note in any event and save another harmless, it is no defense that plaintiff failed to prove a claim in bankruptcy against the estate of the makers; since the same obligation rested upon the defendant.

Cross-appeals from a judgment of the superior court for King county, Main, J., entered July 22, 1912, upon findings in favor of one of the defendants, and against the others, in an action on contract. Affirmed on plaintiffs' appeal and modified on defendants' appeal.

*Geo. McKay,* for appellants.

*Geo. B. Cole,* for appellants Eitel *et al.*

*Tucker & Hyland (Aubrey Levy,* of counsel), for respondent.

CHADWICK, J.—One Clark O'Bryan was promoting an irrigation scheme, near North Yakima, Washington. Plaintiffs Handsaker and wife were interested therein, Mr. Handsaker being vice president of the company. Being in need of funds to carry on the development work, O'Bryan met defendant Eitel, and upon Eitel's solicitation Pedersen agreed with Eitel that they would loan their credit to the irrigation company to the extent of $5,000. Notes were accordingly made, each in the sum of $2,500, payable to the order of Hans Pedersen and Fred J. Eitel, and these were signed: "North Yakima and East Selah Irrigation Company by Clark O'Bryan, president." Eitel took these notes to a bank at North Yakima, and offered them for discount upon the indorsement of Pedersen and Eitel. The bank declined to accept the paper. This fact becoming known to Mrs. Handsaker, she went to the bank and personally offered the credit

of plaintiffs and certain collaterals owned by them, and thereafter plaintiffs signed the notes and pledged their securities; whereupon the bank advanced the money. Pedersen was not present when the notes were signed by plaintiffs, and knew nothing of their relation thereto until after the last payment of interest made by him, which was on the 3d day of July, 1910.

The money realized on the notes was deposited in the bank, $2,000 to the credit of Eitel and $3,000 to the credit of O'Bryan for the use of the company. One thousand five hundred dollars of the money credited to O'Bryan was paid to plaintiffs to take up an obligation owing by the company. Eitel had no interest in the $2,000 deposited to his credit. One Bryant seems to have been in charge of some tunnel work for the company. The money was borrowed to meet some debts of the company and to complete the tunnel. Bryant was unwilling to trust O'Bryan, and agreed to continue the work only upon condition that Eitel would see that he was paid. Bryant proposed that he should go ahead with the work, which he did, and Eitel gave him upon demand from time to time varying sums of money until the $2,000 was exhausted. Eitel had no interest either in the work or in the money. He became rather a voluntary trustee for the company.

It is claimed by plaintiffs that they did not become makers on the note, but only indorsers for the debt of Eitel and Pedersen, and then only upon the verbal assurance of Eitel that he and Pedersen would pay the debt. The fact that plaintiffs signed the notes in the lower left hand corner of the note is relied upon as a circumstance indicating a purpose not to be bound as makers. But this circumstance, if worthy of consideration at all, is overcome by the voluntary offer of their signatures and securities by plaintiffs after the loan had been turned down, and by the testimony of Mr. Fechter, the president of the bank, who transacted the business at the time. He says:

"I made the loan on the strength of their signatures and the mortgage security. . . . Q. You insisted on having them sign as makers of the note? A. Yes. . . . Q. And it was agreed then and there, was it not, that if Mr. and Mrs. Handsaker would put up this collateral security, that you would make the loan or discount the notes so to speak? A. Yes. Q. Upon the Handsaker signature? A. Yes."

From these facts, the court concluded:

"That the signature of the plaintiffs to the said notes was a material change in the legal effect of said notes; that the said defendant Pedersen did not consent to said change, and never waived the same, and that he is released and a judgment of dismissal should be entered in his favor, and that the plaintiffs shall recover from defendant Eitel."

Judgment was entered accordingly. Plaintiffs have appealed from the judgment in favor of Pedersen, and Eitel from the judgment against him. The parties will be referred to as plaintiffs, Eitel, and Pedersen.

The judgment in favor of Pedersen is sought to be overturned upon the theory that Eitel was agent for Pedersen, and having authority to discount the note, was empowered to do everything necessary to procure the money. Without discussing the obligation of a maker under such circumstances, we are quite clear that Eitel was not Pedersen's agent with any such authority. They were not partners. They had no interest pecuniary or otherwise in the company. They had become accommodation parties only.

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person." Rem. & Bal. Code, § 3420.

The proceeds of the note were not and did not go to them, nor were they used for their benefit; all of which plaintiffs knew at the time they became parties to the instrument, notwithstanding their present contention that:

"Eitel and Pedersen procured the plaintiffs to be accommodation parties as a means to secure their ends and purposes; that is, the discount of the notes; and that Eitel found it necessary to use the pledge of the plaintiffs' security and the use of their names."

A resort to fundamental principles makes it plain that, up to the time the plaintiffs signed the note it was only a piece of paper. No money had been advanced and no 'credit advanced. It was without consideration, present or prospective. It had been made with a definite purpose, and had found no favor in the current of trade. The money that was finally paid thereon was not paid on the faith and credit of the note, but upon the personal and collateral security of the plaintiffs. Hence, it follows that the addition of the names of plaintiffs as makers was such a material alteration under § 3515 as to excuse and discharge Pedersen, he having no notice of the alteration. An alteration which changes "(4) the number or the relations of the parties" is a material alteration. Rem. & Bal. Code, § 3515.

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to alteration, and subsequent indorsers." § 3514.

Affirming the judgment in favor of Pedersen as we do, we shall not go into the reasons for the rule, but will content ourselves by quoting from Mr. Daniel on Negotiable Instruments, § 1375:

"It will be no answer to a plea of alteration that its operation is favorable to the parties affected by it, whether in lessening the amount to be paid, enlarging the time of payment, or otherwise. No man has a right to vary another's obligations at his discretion, whether for his good or ill. It ceases when varied to be that other's act, and it suffices for him to say, 'Non haec in foedera veni.' It may be questioned whether or not prolongation of time, decrease of amount, or other apparently beneficial alteration is really so. A debtor may make provision for payment on one day, and not be

ready on another.  A decrease of the amount destroys the identity, and confuses the traces of his obligation, and every reason of policy and principle forbid that the laws should tolerate tampering with the rights and engagements of others."

"As to the parties to a bill or note, any change in the personality, number, or relations of the parties is, as a general rule, a material alteration.  Thus, where C., member of the firm of C. & Co., obtained an accommodation indorsement to his individual note, and then added '& Co.' to his signature, thus making it his firm's note, it was held a material alteration.  When there are several makers or co-sureties, the addition of another maker or co-surety constitutes a material alteration; for the addition of another maker destroys the integrity of the original contract; and the addition of another co-surety changes the right of the sureties in respect to the proportion of contribution for which each is liable to the others.  And the erasure of the name of one of two drawers or makers, or payees, who have indorsed the paper, or of one of several co-sureties, or the name of the payee and inserting another, is likewise a material alteration."  Id., § 1387.

See, also, 2 Cyc. 179.  Many cases will be found in these texts supporting and sustaining the law as declared in our statute above cited.

Eitel, we find, assented to the alteration and would therefore be bound, as between the remaining parties, to pay his contributory share of the note irrespective of his oral promise.  Passing now from Eitel's obligation as an accommodation party, and considering his oral promise to pay the note in any event and to save plaintiffs harmless, while there is no equity in plaintiffs' case, the testimony sustains this finding of the trial judge, and we reluctantly hold that Eitel is bound by his promise.  It is contended that plaintiffs cannot limit their liability by showing an oral promise or contract that they were not to be bound to pay the note according to its tenor.  *Anderson v. Mitchell*, 51 Wash. 265, 98 Pac. 751, and *Bradley Engineering & Mfg. Co. v. Heyburn*, 56 Wash. 628, 106 Pac. 170, 134 Am. St. 1127, are relied on.  The

rule there announced would apply if this suit were maintained by the payee or owner of the note. Here we have a suit upon an independent contract between accommodation parties, and the rule which denies the right to set up an oral contract limiting or destroying the written obligation cannot be raised as a shield; for the contract of the accommodation parties is not evidenced by the note, but rests in parol. Nor is the promise, as is suggested, a promise to pay the debt of another. It is a promise personal to the promisor.

"It is a general rule that the true relation subsisting between the several parties bound for the performance of a written obligation may be shown by parol evidence. An unwritten agreement made between such parties prior to, or contemporaneously with, their executing an instrument as sureties, by which one promises to indemnify the other from loss, may be proved by parol, and the surety who made the agreement cannot, in such case, recover contribution from the other. . . . There is no agreement between the sureties contained in the obligation signed by them. The agreement is between the obligors and the obligee. As between the various sureties there is no written agreement; there is only an equitable presumption, raised by the fact of payment, that the sureties ought to contribute equally for the default of the principal. This equity can be rebutted by parol." 1 Brandt, Suretyship Guaranty (3d ed.), § 287. See, also, 32 Cyc. 283, 289; *Craythorne v. Swinburne*, 14 Ves. 160; *Hunt v. Chambliss*, 7 Smedes & Mar. (Miss.) 532; *Rae v. Rae*, 6 Irish Ch. 490; *Barry v. Ransom*, 12 N. Y. 462; *Paulin v. Kaighn*, 27 N. J. L. 503; *Cox. v. Waggoner*, 5 Sneed (Tenn.) 542; *Thomas v. Cook*, 8 B. & C. 728, 7 L. J. K. B. O. S. 49, 3 M. & R. 444, 15 E. C. L. 358.

We do not understand that plaintiffs' have any right of action upon the note. They can recover only on an express or implied promise. The complaint states a cause of action upon the special promise and not upon the note, as both parties and the court below seem to have assumed. The promise being only to save harmless, it follows that there was no warrant in law for the allowance of an attorney's fee

as provided in the note, for plaintiffs paid the note without suit or costs and the measure of their recovery is the amount paid and no more.

It is finally insisted that, whereas the irrigation company was thrown into bankruptcy, and a bid for the corporate assets purporting to be sufficient in amount to cover all proved claims was accepted by the court, plaintiffs should not recover because they failed to prove their claim. We would be glad to so hold, but are again met by the settled law. The same obligation rested on Eitel. Having failed to meet it, he cannot now complain if plaintiffs rely and insist upon the performance of his personal contract.

The judgment against Eitel will be modified by striking out the sum of $500 allowed as attorney's fees. In all other respects the judgment is affirmed. Eitel and Pedersen will recover their costs in this court.

PARKER, CROW, and GOSE, JJ., concur.