[No. 11050. Department One. August 11, 1913.]

WASHINGTON FINANCE CORPORATION, *Appellant*, v. R. E. GLASS et al., *Respondents.*[1]

ALTERATION OF INSTRUMENTS — MATERIALITY — BILLS AND NOTES— INDORSEMENTS—REDUCTION OF AMOUNT. The indorsement upon the back of a note, offered for discount to a bank, of a fictitious payment, reducing the amount of the principal sum, as a condition precedent to discount or delivery to the original payee, without the knowledge of an accommodation maker, is a material alteration, within the negotiable instruments act, Rem. & Bal. Code, §§ 3514, 3515, providing that a promissory note is avoided by a material alteration without consent of all the parties, and that any alteration is material which changes . . . the sum payable . . . or which alters the effect of the instrument in any respect; and it is immaterial that the change was to the advantage of the maker.

SAME—TIME OF ALTERATION—BILLS AND NOTES—EXECUTION. An indorsement of a fictitious payment on the back of a note offered for discount, reducing the amount of the principal sum, as a condition precedent to discount or negotiation, is not made after "execution" of the note, and is therefore a material alteration, although the note had been signed, since it had not been delivered, and execution requires both signature and delivery of a note meeting all the requirements of the negotiable instruments act, Rem. & Bal. Code, § 3392.

BILLS AND NOTES—BONA FIDE PURCHASERS—HOLDER IN DUE COURSE —ACTUAL NOTICE—PARTICIPATION IN ALTERATION. A bank to whom a note was offered for discount, is not a holder in due course without notice of a material alteration, within the negotiable instruments act, Rem. & Bal. Code, § 3514, where it was a party to and participated in the alteration by insisting upon the indorsement of a fictitious payment reducing the principal sum, as a condition to acceptance and discount.

[1]Reported in 134 Pac. 480.

Appeal from a judgment of the superior court for King county, Main, J., entered August 5, 1912, upon findings in favor of the defendants, in an action upon a promissory note, tried to the court. Affirmed.

*Bogle, Graves, Merritt & Bogle,* for appellant.

*W. W. Felger,* for respondents Stokes.

CHADWICK, J.—Defendant Glass solicited the defendants Stokes and wife to join him and his wife as makers of a promissory note for the sum of $15,000. Stokes and wife agreed to do so upon condition that he would secure the signatures of W. A. Ridgway and wife and William Housten and wife. This, Glass agreed to do, and the note was accordingly signed by Stokes and wife. No effort was made, so far as the record shows, to secure the other names. The note was turned over to Ridgway to negotiate for the benefit of Glass.

At the time the note was executed, it was not known where or of whom the money could be obtained, and the space provided for the name of the payee was left blank. Ridgway took the note to the Spokane & Eastern Trust Company, at Spokane, and endeavored to obtain a loan in the sum of $15,-000. At first the negotiations hung on the question of discount, the bank demanding the sum of $1,000. For reasons which, to the bank, seemed sufficient, coupled with the possible reason that Ridgway refused to guarantee the loan for more than $11,000, the bank finally refused to loan more than $11,000, subject to a discount in the same proportion, or eleven-fifteenths of $1,000. The bank then filled in the name of Ridgway as payee, and had him indorse the note in blank, and took a personal guarantee of its payment. It then paid him the sum of $10,240.14, being $11,000, less the agreed discount. To make the note conform to the contract made with Ridgway, the bank indorsed a payment of $4,000 on the back of the note. Ridgway paid the proceeds of the note to Glass.

The defendants Stokes and wife have never ratified the changes made in their contract. The note was not paid when due, and this suit was brought to compel payment. The defendants Stokes and wife have set up several defenses, only one of which will be noticed by us, i. e., a material alteration.

The court found that there was a material alteration of the note, and defendants Stokes and wife were absolved of all liability. A judgment was rendered in their favor. Plaintiff has appealed.

It is the contention of the appellant that the judgment is ill founded in law for the reasons that the alteration is not material in that it reduced the amount to be paid, and was therefore for the benefit of the makers; that an indorsement of a payment on the back of an instrument is not an alteration within the meaning of the statute; and that the alteration, if any, was made before the note was executed, and hence is not within the prohibition of the negotiable instruments act. The act provides:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers. But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor." Rem. & Bal. Code, § 3514 (P. C. 357 § 247).

"Any alteration which changes—
"(1)    The date;
"(2)    The sum payable, either for principal or interest;
"(3)    The time or place of payment;
"(4)    The number or the relations of the parties;
"(5)    The medium or currency in which payment is to be made;

"Or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration." Rem. & Bal. Code, § 3515 (P. C. 357 § 249).

We had occasion to discuss these sections in the case of *Handsaker v. Pedersen*, 71 Wash. 218, 128 Pac. 230. There, as here, the instrument did not find favor in the current of trade, and to meet the demands of the bank to which the note was offered, other names were added as makers. We held this to be a material alteration within the meaning of the statute. It was insisted that Pedersen should not be heard to make the defense of material alteration, for the reason that the change was for his benefit in that the addition of other names as makers tended to reduce *pro tanto* his primary liability. We contented ourselves with quoting the statute, which seemed too plain for discussion, and by reference to Daniel on Negotiable Instruments, § 1375 and § 1387.

Whatever comfort may be extracted from the older authorities, we are quite clear that it was the purpose of the negotiable instruments act to avoid and make impossible just such situations as is presented in this case. There was a purpose in the adoption of the negotiable instruments act, declared in the propaganda which preceded its adoption, and manifested in the act itself; that is, that all cases arising under it should, if possible, be decided by reference to it, and not by reference to any equities existing between the parties. It may be in a given case that an indorsement of a payment would be for the benefit of a surety or an accommodation maker. In another case it might work his destruction. So too, the addition of another name as a maker, or the extension of the time of payment would theoretically be for the benefit of the surety or accommodation maker, but the law regards not the purpose or the effect of the change. *Handsaker v. Pedersen, supra;* Daniel, Negotiable Instruments, § 1375. It is enough that, whether advantageous or not, the change results in a contract upon which the minds of all parties have not met. *Wood v. Steele*, 6 Wall. 80. The statute cannot be read in any other way. Therefore, in order to avoid such contingencies, the negotiable instruments act was drawn, and when adopted displaces the Law Merchant,

which had become, through the mediumship of hard cases, saturated with permissible causes of action and defenses of an equitable nature. In his first criticism of the proposed law (14 Harvard Law Review 241) Professor Ames, Dean of the Harvard Law School, admits this virtue. "Especially to be commended are those sections of the new code which settle, and in a right way, certain questions which have been a prolific source of litigation and antagonistic decisions." See generally the reprint of Ames-Brewster controversy, Brannan, Negotiable Instruments Law (2d ed.), p. 162 *et seq*.

There is no ambiguity or doubt in the statute we have quoted. It says a change of the sum payable is a material alteration; and to put its intent beyond the cavil of a doubt, it was provided that any "change or addition which alters the effect of the instrument in any respect is a material alteration." This view makes it unnecessary to go beyond the statute, or to discuss the many admittedly conflicting authorities on alterations of instruments under the Law Merchant.

But it is said that an indorsement of a payment on the back of an instrument is not a material alteration; that the statute is intended to cover only such changes as touch the face of the instrument. Whether an indorsement made in good faith after the instrument has been given currency would be a material alteration, we are not called upon to decide. We are quite clear, however, that the indorsement of a fictitious payment as a condition precedent to the acceptance, negotiation, discount, or delivery of a note to the original payee or lender of the money, changes "the effect of the instrument," as well as the sum payable, and is an act proscribed by the statute. It must be borne in mind that the bank never intended to loan $15,000. It did not loan $15,-000. No money was paid in excess of $10,240.14, nor was any sum actually paid in good faith, or at all, to be indorsed on the note. The whole transaction, in so far as the contract pretends to deal with any sum in excess of $10,240.14, is a fabrication. There are reasons for holding a fictitious pay-

ment to be a material alteration. All of them are referable to the principle that a person has a right to make his own contracts. The law, as we now have it, was not drawn solely with reference to the right of the payee of a note. There is nothing sacred in a contract drawn in the form of a promissory note. A payee or holder is not permitted to recover on his part of a contract alone, nor can he insist that the law make a contract for him, or the other contracting party. He must recover upon the contract made by his adversary, and if the instrument has been so changed that it does not voice the original will of the maker, there can be no recovery. A case in point is that of *Johnston v. May*, 76 Ind. 293. There had been an indorsement of a fictitious credit. The court said:

"We need not argue for the purpose of showing that such an alteration of the note was a material alteration, for that is manifest; and the facts found by the court show that this alteration was made in the absence and without the authority of the appellee, and without his knowledge or consent, by the principal in the note and the payee thereof, or one of them, before or at the time of its delivery. Under the decisions of this court, such an alteration will vitiate and avoid the note, and prevent a recovery thereon from the appellee. *Holland v. Hatch*, 11 Ind. 497; *Schnewind v. Hacket*, 54 Ind. 248; *Collier v. Waugh*, 64 Ind. 456; *McCoy v. Lockwood*, 71 Ind. 319; *Dietz v. Harder*, 72 Ind. 208. It may be said, however, that the effect of the alteration of the note, in this case, was to reduce its amount and diminish the appellee's liability, and therefore he ought not to be heard to complain of such an alteration. In the case of *Coburn v. Webb*, 56 Ind. 96, the effect of the alteration of the note in suit was the same as in the case now before us, to diminish the amount of the surety's liability, and the same point seems to have been made in that case as the one now under consideration. Upon that point, in the case cited, this court said: 'This change of the note did not, perhaps, operate to the prejudice of Coburn. But that is not the legal criterion by which to determine whether an alteration of a note destroys it. The question is, is the note sued upon the same note, in legal effect, as that signed by Coburn? If the alteration made the note a different one in

legal effect, then it is not Coburn's note, and he is not bound by it. These views are fully sustained by the current of authorities in this state and elsewhere.' "

This case meets the first two propositions advanced by counsel, and we can safely rest our decision of them upon it and the *Handsaker* case and the authorities therein cited. We have not overlooked the insistence of counsel that the Indiana case is substantially overruled in later cases, but we do not so read the books. In *Meeker v. Shanks*, 112 Ind. 207, 13 N. E. 712, it was held that the name of the payee might be changed without avoiding the contract of an accommodation maker, on the theory that "it was immaterial to the surety who advanced the money, so that the person for whose accommodation he signed obtained the benefit of it." It is enough to say that the alteration here complained of was not discussed. The authority of *Johnston v. May* was not denied. *Holthouse v. State ex rel. Ludlow Falls Quarry Co.* (Ind. App.), 97 N. E. 130, was a case on a contractor's bond, and was decided with reference to the general rules of the law. The negotiable instruments act was in no way involved. It was not relied on by counsel or considered by the court. The case of *Merchants' & Mechanics' Bank v. Evans*, 9 W. Va. 373, should be mentioned. This case is seemingly in point, and is relied on by appellant. A note for $6,000 was signed by seven people, one of whom was the principal maker. The bank discounted the paper for $4,000 only, and the cashier indorsed upon it at the time, "discounted for $4,000, and should be so read." Upon suit brought it was held that, "The original transaction, in its legal effect, amounted to a loan of $6,000, to all the makers of the note, and a payment thereon forthwith, of $2,000, which, in effect, was credited at the time upon the note by the indorsement, which the cashier at once made upon it." And, "the fact that four thousand dollars only, instead of six thousand dollars, was loaned without the consent of some of the makers of the note, who were sureties, does not vitiate the note; for the party who received

the money, had he received in cash the $6,000, would have had a perfect right, without the consent of his sureties, to have paid back at once $2,000 to the bank." This case stands alone so far as we have been able to trace the decisions. It is not cited or commented on by any of the prominent text writers. In our judgment, it is not sound when applied to the state of facts there occurring. We have no doubt that an actual *bona fide* transaction would be upheld by any court. It was not so in that case, neither is it so in this. In the instant case, if the bank took the paper at its face, and Glass, for whose benefit the note was discounted, had thereafter found that he did not need the full $15,000 and had repaid the $4,-000, there could be no doubt of the right to recover. There would have been a loan and a repayment. The case shows no such state of facts. The payment, if it can be so called, was a fiction. The fault of the West Virginia case lies in this: the court assumes that the legal effect of the transaction amounted to a loan of $6,000 and a payment forthwith of $2,000. This is not true. There can be no loan without credit. The makers of the note never had credit for the $6,000. Therefore, there could not be a loan of $6,000 and a payment of $2,000. The object of the note in the present case was to establish a credit for $15,000. If it were not so, respondents might not have signed the note. No such credit was ever established. Whether a transaction of the kind occurring in the two cases is a material alteration depends upon its faith. If the transaction is real and based upon the full credit of the note, it is not a material alteration; if the credit is simulated and the indorsement of a payment is a subterfuge, it is.

It is next contended that the indorsement was made after the execution of the note, and, therefore, forms no part of it. 1 Randolph on Commercial Paper, pp. 300, 301; Daniel on Negotiable Instruments, § 1396; 7 Cyc. 629; and many cases are cited to sustain the proffered issue. Counsel for respondents has cited cases to sustain the contrary of this doctrine. No

purpose will be served by reviewing and distinguishing these cases. Counsel for appellant indulges in a learned argument, but it seems to us that they admit their case away when they say:

"It is true that words on the back of a note made *at the time of* or *prior* to the *execution* of said note, if they in any way affect the operation of the note, are considered as a material part of the note, and that an alteration of such words would be a material alteration, and that the writing of an endorsement on the back of a note, if made *contemporaneous* with the note, is considered as a part of the note; but an endorsement made subsequent to the execution of the note is not considered as a part of the note itself."

The real question confronting the court is: When was the note executed? A note is distinguished by its parts and particular requisites. It must be in writing, and signed by the maker or drawer; it must be an unconditional promise to pay a sum certain; and it must be payable to order or bearer. There are certain other requisites not now necessary to enumerate. Rem. & Bal. Code, § 3392 (P. C. 357 § 1).

Keeping this section of the statute in mind, it is the law that, until a note meets these requirements, it is not executed. A note is executed when it is complete in its parts, and launched on the current of trade. The note sued on, although signed by certain parties, and in this sense executed by them, was not an executed instrument within the meaning of the law. It was not ready for delivery, nor was it delivered, until the name of the payee was inserted and the indorsement made.

"Execution of a note requires both a signature and delivery. In a legal sense the word execute includes delivery and implies a complete contract." Words and Phrases, Title "Execute."

See, also, *Nicholson v. Combs*, 90 Ind. 515, 46 Am. Rep. 229; *Bagley v. McMickle*, 9 Cal. 430.

The bank refused to accept or discount the note until the fictitious payment was indorsed upon it. As the note was ad-

mittedly indorsed before delivery, and delivery being an essential element of execution, it follows that the change was made before execution, and is therefore material. Daniel, Negotiable Instruments, § 1396. We are not called upon to decide what the legal effect of an indorsement after execution would be.

Neither can the plaintiff recover under the provisions of the negotiable instruments act, wherein it is provided that, when an instrument has been materially altered and is in the hands of a holder in due course not a party to the alteration, he may enforce payment thereof according to its original tenor. Rem. & Bal. Code, § 3514 (P. C. 357 § 247). The Spokane & Eastern Trust Company was not a holder in due course. *First Nat. Bank v. Barnum*, 160 Fed. 245. The bank had notice of the infirmity. It was a party to, and participated in, the act of alteration. Other defenses are urged, but being satisfied that no recovery can be had, for the reasons stated, we will not pursue our inquiry further.

Affirmed.

CROW, C. J., GOSE, MOUNT, and PARKER, JJ., concur.