JOHN F. DILLE, Appellant, v. O. H. LONGWELL et al., Executrix, Appellees.

**ALTERATION OF INSTRUMENTS:** Material Alteration—Inserting
1   **Interest Rate.** The insertion in a promissory note, after its delivery and without the consent of the maker, of a rate of interest in a blank provided therefor, constitutes a material alteration, and avoids the note between the immediate parties thereto.

**EVIDENCE:** Parol as Affecting Writings—Material Alteration of Note.
2   In an action on a promissory note calling for a stated rate of interest, parol evidence is admissible to show, *on the issue of material alteration and consequent invalidity of the note,* that, when the note was executed, it was agreed that it should not draw any interest; likewise the relevant circumstances attending the execution of the note and showing the reasonableness or unreasonableness of such claimed agreement are admissible.

APPEAL AND ERROR:  Curing Error—Improper Reception and Stress-
3  ing of Irrelevant Testimony.  The reception of irrelevant and im-
material testimony may be in such volume and the stress placed
thereon throughout the trial may be so persistent as to present error
so prejudicial that not even the curative quality of a peremptory
instruction to disregard the testimony will cure the error.  *A priori*
is this true when the instruction to disregard is qualified.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

MARCH 7, 1924.

REHEARING DENIED SEPTEMBER 26, 1924.

ACTION on a promissory note.  A trial to a jury upon the
defense that the note had been materially altered after delivery,
resulted in a verdict for the defendant.  From a judgment upon
the verdict, plaintiff appeals.—*Reversed.*

*Nourse & Nourse,* for appellant.

*Clark & Byers* and *Gregory Brunk,* for appellees.

VERMILION, J.—The plaintiff sues to recover the amount
due on a promissory note.  This is the third appeal in this case.
The first appeal (169 Iowa 686) was by defendant from an order
overruling a motion to transfer the cause to the equity docket.
The answer contained an allegation that it was the understand-
ing and agreement between the parties to the note that it should
draw no interest, and that, through mistake of the person draw-
ing the note, it contained a provision for interest at the rate of
5 per cent; and there was a prayer for the reformation of the
note in this respect.  This allegation and prayer formed, in
part, the basis for the motion to transfer to equity.  Upon ap-
peal, it was determined that this issue did not reach to the
whole cause of action, and that while, if a proper motion was
presented asking that the trial of the question of reformation
be in equity, it would be good, the whole case could not be so
transferred.  The other allegations relied upon as a ground for

the motion were held not to present an equitable issue. No motion was made for a trial in equity of the question of reformation alone. All question was thus settled as to whether the note expressed the real contract of the parties, so far, at least, as related to the amount of recovery, if a recovery was had.

The case was then tried to a jury upon the issue, raised by answer, that the contingency upon which the maturity of the note depended, according to its terms, i. e., "when the present indebtedness of the Highland Park Company is paid," had not happened, and the note was not due. There was a directed verdict for the defendant, and judgment against plaintiff, from which he appealed. On the second appeal (188 Iowa 606) it was determined that the note came due at the expiration of a reasonable time after its execution. There was no claim then, nor is there now, that a reasonable time had not been given defendant after the execution of the note for its payment. It was, therefore, determined on the second appeal that the note was due, and hence all questions as to the amount of the debts of the Highland Park Company, or whether they had been paid, were wholly immaterial. During the first trial, by an amendment to the answer, defendant set up the defense that the note had been materially altered after its execution and delivery, by writing the word "five" in it in two places, making it draw 5 per cent interest from date, payable annually, and any interest not paid when due to draw 5 per cent per annum, payable annually. It was further alleged that it was the agreement between the parties, at the time the note was executed, that it should not draw any interest.

The case was again tried to a jury upon the question of the alleged alteration of the note, the trial resulting in a verdict for the defendant. From a judgment rendered on the verdict, the plaintiff prosecutes this appeal.

Although stated in a variety of forms, and referring to numerous different rulings of the court, three principal questions are presented: (1) Did the trial court err in admitting parol evidence as to the alleged agreement of the parties that the note should not draw any interest? (2) Was it prejudicial error to admit evidence as to the debts of the Highland Park

Company, and, if so, was the error cured by instruction to the jury?   (3) Was there any evidence to carry to the jury the question of the alleged alteration of the note?

The last question goes to the merits of the controversy, and will be first considered.

The note is upon a printed form, and may be found set out in the opinion on the first appeal.  The printed matter, so far as now material, is as follows:

1. ALTERATION OF INSTRUMENTS: material alteration: inserting interest rate.

"* * * with interest payable annually at the rate of .... per cent per annum until paid. Interest when due to become principal and draw .... per cent interest."

The word "five" is written in each of the above blanks.  It is the contention of the defendant that, at the time the note was delivered, these blank spaces were unfilled, and that thereafter, without the consent of the payer, the word "five" was inserted, thus making the note draw five per cent compound interest.  There is a conflict in the testimony as to whether these blanks were filled at the time the note was delivered, so that, upon the naked proposition of fact, there was a question for the jury.  Whether, if the facts claimed are established, there was a material alteration, is a question of law for the court. *Hessig-Ellis Drug Co. v. Todd-Baker Drug Co.*, 161 Iowa 535; *Wood v. Steele*, 6 Wall. (U. S.) 80 (18 L. Ed. 725).

It is to be observed that the note in question was executed before the taking effect of the present Negotiable Instruments Law, and therefore Section 3060-a14 of that act has no application.

It is insisted that the delivery of a note with unfilled blanks gives implied authority to fill them, and that, if it be conceded that the word "five" was inserted in the blanks in the note after its delivery, this did not amount to a material alteration.  This rule has been frequently announced in cases where the rights of a bona-fide holder of the paper were involved.  But, as applied between the original parties to the note, or those in no better situation, it could not be so broadly stated, before the enactment of the section referred to, and there could, at most, be implied authority only to fill the blanks in accordance with

the terms of the agreement. We do not have to do here with the rights of a transferee who takes the note for value, before maturity, and without notice. As between the parties, or the maker and one who is not a bona-fide holder, any implication of authority to fill blanks cannot prevail, as a matter of law, as against positive testimony that no such authority was given. *Conger v. Crabtree,* 88 Iowa 536.

Moreover, the rule that the filling of the blanks in a delivered note is not an alteration of it has not been followed by this court; but the contrary doctrine has frequently been recognized. In *Rainbolt v. Eddy,* 34 Iowa 440, a rate of interest had been inserted in a blank in the note. The note, however, was in the hands of a bona-fide purchaser, and the validity of the note was upheld. In *First Nat. Bank v. Hall,* 83 Iowa 645, where the rate of interest had been inserted after delivery in a blank through which a line had been drawn, it was conceded that the alteration, if made, was material, and would, under general rules as to alteration of instruments, avoid the note. In *Conger v. Crabtree,* supra, it was said that there was evidence showing that, "when the note was made and delivered, it did not provide for the payment of interest, but contained two blanks" in the interest clauses, which were filled, without the knowledge or consent of the maker, after delivery. With respect to the claim of an implied power to fill the blanks, the court said:

"But whether a power to fill such blanks as those in controversy may exist by implication, in any event, we need not determine. In this case it is shown clearly that it was withheld."

The alteration was held to be material and a forgery, and to render the note void as between the parties. In *Derr v. Keaough,* 96 Iowa 397, the insertion of a rate of interest in a blank in the note after delivery, without the knowledge or consent of the maker, was held to be a material alteration. In *James & Haverstock v. Dalbey,* 107 Iowa 463, it was held that the insertion of the figure 6 in a blank space in the note was not a material alteration, for the reason that the note, as delivered, provided for interest, and, the rate not being specified, it drew 6 per cent, under the law, and the insertion of the rate

provided by law did not change the legal effect of the contract. In *Barnes v. Thomas*, (Iowa) 193 N. W. 409 (not officially reported), the note was altered to change the rate of interest. The case was disposed of, however, upon the ground that the sufficiency of the facts pleaded to constitute a defense had not been challenged by motion or demurrer.

Cases holding that the delivery of a deed with the space for the grantee's name unfilled authorizes the one to whom it is delivered to insert his own or another name therein are not in point.

While there are authorities holding that an alteration which is not prejudicial, or where the liability of the party complaining is not increased or enlarged, is not material, the weight of authority is that, if the legal import and effect of the instrument are changed, it does not matter how trivial the change may be, or whether it is beneficial or detrimental to the party sought to be charged, it is a material alteration, and invalidates the instrument. 2 Corpus Juris 1174; *Dickerman v. Miner,* 43 Iowa 508; *State v. Craig,* 58 Iowa 238; *Hamilton v. Hooper,* 46 Iowa 515; *Sullivan v. Rudisill,* 63 Iowa 158; *Commonwealth Nat. Bank v. Baughman,* 27 Okla. 175 (111 Pac. 332); *Washington Finance Corp. v. Glass,* 74 Wash. 653 (134 Pac. 480, 46 L. R. A. [N. S.] 1043); *Montgomery v. Crosthwait* (Ala.), 12 L. R. A. 140; *Board of Commissioners v. Greenleaf,* 80 Minn. 242 (83 N. W. 157); *Hecht v. Shenners,* 126 Wis. 27 (105 N. W. 309); *Post v. Losey,* 111 Ind. 74 (12 N. E. 121); *Adams v. Faircloth* (Tex. Civ. App.), 97 S. W. 507; *Phoenix Ins. Co. v. McKernan,* 100 Ky. 97 (37 S. W. 490); *Kalteyer v. Mitchell* (Tex. Civ. App.), 110 S. W. 462; *Coburn v. Webb,* 56 Ind. 96 (26 Am. Rep. 15); *Johnson Farm Loan Co. v. McMangal,* 288 Fed. 185; *Wood v. Steele,* supra.

An alteration in a note reducing the rate of interest has been held to be material in the following cases: *Keene v. Weeks,* 19 R. I. 309 (33 Atl. 446); *Whitmer v. Frye,* 10 Mo. 348; *New York Life Ins. Co. v. Martindale,* 75 Kan. 142 (88 Pac. 559, 21 L. R. A. [N. S.] 1045).

We are of the opinion that the insertion of the word "five" in the blank spaces in the note, if done after the delivery of the

note and without the consent of the maker, constituted a material alteration of the instrument, and would operate to render it unenforcible.

Whether the words in question were inserted at the time of the execution and delivery of the note or after its delivery was clearly a question for the jury. There is a sharp conflict in the evidence upon the proposition, and the weight and credence to be given to the testimony of the respective parties were matters for the determination of the jury.

That the defendant was entitled to show what was claimed to be the real agreement between the parties with respect to the matter of interest is, we think, well established. *Coit & Co. v.*

2. EVIDENCE: parol as affecting writings: material alteration of note.

*Churchill & Co.,* 61 Iowa 296; *Hessig-Ellis Drug Co. v. Todd-Baker Drug Co.,* 161 Iowa 535; *Yancy v. Gordon,* 172 Ala. 439 (55 So. 239); *Richards v. Day,* 137 N. Y. 183 (33 N.

E. 146); 2 Corpus Juris 1282, 1283. See, also, *Derr v. Keaough, supra.*

Nor does the circumstance that the maker of the note claimed that it was not to draw any interest at all, while, under the statute and its terms, without the claimed alteration, it would draw 6 per cent, alter the rule. It was not an attempt to vary or contradict the terms of the note to affect the amount of recovery, but to defeat it entirely, by showing a material alteration. It is conceded that the maker could testify that no rate of interest was named in the note at the time of its delivery. If he must stop there, and could not testify to what he claimed the real agreement was, he was left in the apparent position of complaining of a reduction of the rate of interest, and of asserting that, after the delivery to the payee, a note drawing 6 per cent had been so altered that it drew 5, when that was not, in fact, his claim at all, although it is the legal effect of the situation.

The fact that he made the claim that the note was not to draw interest, and the circumstances upon which the claim was based, were, we think, matters that defendant was entitled to show, as bearing upon the reasonableness of his claim of alteration, and notwithstanding the fact that such a contention could

not be established as against the terms of the note, to reduce the amount of recovery upon it.

"The inherent nature of the matter set up as an alteration may be admitted as evidence of the probability or improbability of the fact." 2 Corpus Juris 1282.

At the time of the last trial, the payer of the note was dead, and the transcript of his testimony on the former trial was introduced by the defendant. Over proper objections, defendant was permitted to read a large number of questions and answers relating to the debts of the Highland Park Company at the time the note was given, whether they had been paid or were still in existence, and how the business of the company had prospered. Without setting out the various questions objected to and the answers admitted, it will be sufficient to say that the witness testified, in substance, that, at the execution of the note, the company was indebted in a large amount; that the indebtedness had increased, and the company, or its successor through reorganization, was still heavily indebted; that, at the time the note was executed, there was a mortgage on the property for a considerable amount; and that that indebtedness, or a large portion of it, was still in existence.

3. APPEAL AND ERROR: curing error: improper reception and stressing of irrelevant testimony.

It was settled on the second appeal that the note was due, and this testimony was clearly not relevant or material to the issue of the alteration of the note, presented on the last trial. That its admission was error cannot be doubted, and the only question arising at this point is whether the error was cured by the instructions to the jury. The court correctly defined the issue on trial, and instructed, in substance, that, as a matter of law for the purpose of the case, the note was due, unless it was voided by the alleged alterations; and that the jury should not concern themselves or engage in any unnecessary discussion over the question whether the debts of the Highland Park Company had been paid or not, but should confine themselves entirely to the one issue submitted,—that of the alteration of the note in suit. The evidence in question was not, in terms, withdrawn from the consideration of the jury, nor were they told that it should not be considered for any purpose. It is doubtful if even

a peremptory instruction of this character could, under the circumstances, have cured the error of admitting the testimony; but we are of the opinion that the direction given did not do so. It went no further than to say that the note was due, and that the jury should not concern themselves over the question whether the debts were paid or not, and should not engage in any unnecessary discussion over that question. Neither this nor the direction to confine themselves entirely to the question of the alleged alteration of the note admonished them that the evidence which was still before them had no bearing on that question, and could not be considered in determining it.

The subject of the debts of the Highland Park Company was emphasized by counsel during the trial. He was permitted to introduce and read to the jury a portion of the cross-examination of the payee of the note, as found in the transcript of the evidence at the former trial, concerning the debts, and including the following question or statement of the attorney conducting the cross-examination:

"Now I want to get at the debts. That is what I am interested in: that is what we are all interested in."

All of the matter so introduced was subsequently, on motion, stricken from the record, and withdrawn from the consideration of the jury. The error of receiving it was, perhaps, cured, if this matter stood alone; but it goes to show the stress laid upon the immaterial matter of the debts throughout the trial. On cross-examination of the payee of the note, the witness was required to read to the jury the clause of the note referring to the debts, and was asked, over objection, if that was discussed at the time the note was executed, and if it was discussed that the money defendant was to pay for an interest in the company was to be applied on debts. This was not proper cross-examination, and served further to emphasize the matter of the debts.

In view of the volume of testimony admitted relating to the debts of the Highland Park Company, in comparison with that directed to the real issue, and the emphasis put upon that question throughout the trial, we think the jury may well have been

misled into giving weight to it, notwithstanding the instruction of the court.

In the transcript of the testimony of the maker of the note, it appeared that, in answer to a question as to what was said about the rate of interest at the time the note was executed, the witness replied:

"No, sir; we decided, and it was always understood, that there was to be no interest."

A motion to strike the answer as a conclusion was properly overruled, it appearing from the transcript that the next question was, "Did he state that?" to which the witness replied, "Yes, sir."

The payee of the note was asked, on cross-examination, who wrote the indorsements on the note. While the matter was not material, and had not been inquired about on direct examination, it was not prejudicial error to permit an answer.

Because of the error in admitting testimony concerning the debts of the Highland Park Company and the management of its business, which we think was not cured by the instruction given to the jury, the case is—*Reversed and remanded.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.