HESSIG-ELLIS DRUG Co., Appellant, v. TODD-BAKER DRUG CO., Appellee.

Contracts: CONSTRUCTION: ALTERATION: MATERIALITY. The construc-
1   tion of a contract, and whether an alteration made after its execution was material, are questions of law; but where the finding of a jury that an alteration was not material would be favorable to the appellant, or a finding that it was material would be no more than the law exacts, a submission of that question was not prejudicial. In the instant case an alteration of an advertising provision in a contract for the sale of goods, so as to make the rights of parties depend upon the termination of ''Iowa'' contracts rather than contracts for advertising in certain named papers, was a material alteration as a matter of law, but submission of the question to the jury was not prejudicial.

Same: FRAUD: BURDEN OF PROOF: EVIDENCE. Where there is nothing
2   on the face of a written contract to indicate that it had been altered after its execution and delivery, there is no legal presumption of its alteration; and the party alleging alteration has the burden of proving that the instrument was wilfully and fraudulently altered after its execution and delivery, either by direct proof or by facts and circumstances from which such fraud may reasonably be inferred. The evidence in the instant case is held sufficient to war-

rant a finding that the instrument in question was altered after its execution by defendant and while in the possession of plaintiff or its agents.

Same: EVIDENCE. Evidence of what the agreement of the parties really was is admissible to show a material alteration in a written contract. And where a contract for the sale of medicines was altered, so as to make it expire upon the termination of the sellers general advertising contracts rather than upon a stated date as claimed by the purchaser, a letter written by the purchaser to the seller in which he refused to carry out the contract if the time of its duration was to be left indefinite was admissible.

New trial: RECORD: REVIEW. Where the only reference to the misconduct of counsel in argument is contained in a statement in the motion for new trial the matter will not be considered on appeal.

*Appeal from Woodbury District Court.*—HON. WM. HUTCHINSON, Judge.

THURSDAY, OCTOBER 23, 1913.

ACTION at law on contract. Defense, material alteration after delivery, and counterclaim. From judgment against plaintiff on its claims and in favor of defendant on its counterclaim, plaintiff appeals.—*Affirmed.*

*R. H. Brown,* for appellant.

*A. Van Wagenen,* for appellee.

WITHROW, J.—I. This case has once before been in this court. 153 Iowa, 11. The question then determined had relation to the nature of proof which was competent under the pleadings as they then stood. By amendment the defect has since been remedied. In stating the issues we shall refer to the parties as plaintiff and defendant.

Plaintiff sued upon a contract alleged to have been entered into with the defendant September 4, 1908, which so far as is material to this appeal is as follows:

This agreement made this 4th day of September, by and between Hessig-Ellis Drug Company of Memphis, Tennessee, the party of the first part, and Todd-Baker Drug Company of Sioux City, Iowa, the party of the second part, witnesseth: First. In consideration of the purchase of a certain quantity of the product of the party of the first part by the party of the second part, said product being known and described as Dr. Nott's Cuban Hair Restorer and Tonic, the amount of said purchase being designated by order given this day and date, and which for the purpose of identification is marked 'A,' now, therefore, in consideration of the faithful fulfillment of the terms of said order A, together with the terms of this contract by the party of the second part, the party of the first part agreed to contract with the Zellner Adv. Agcy., Memphis, Tennessee, for from 10,000 to 20,000 lines agate measure of advertising specifying the Tribune and Journal papers, singly or divided, said advertising to be executed during the twelve months following date of the delivery of the goods described by order A at Sioux City. . . . Third. . . . If for any reason the party of the second part should default in the terms of the agreement made this day and date, then in that case the party of the first part shall have a measure of damages against the party of the second part, the collection of the amount specified in order A, together with claim for whatever advertising that may have been executed in the local papers at Sioux City up to and inclusive of the date of default. . . . Sixth. We hereby authorize the Hessig-Ellis Drug Co. to place an order for advertising as provided for in clause first of this agreement through the Zellner, Memphis, Tenn., advertising agency, at the expense of the party of first part. [Signed] Todd-Baker Drug Company.

In consideration of the fulfillment of the terms of the order 'A' and contract 'B' by the party of the second part, the party of the first part agrees to take back at full invoice price all goods remaining unsold in the hands of the party of the second part, at the end of the Iowa advertising contract. Party of second part to have first option on melon seed proposition.

Plaintiff avers that in pursuance of such contract it placed the amount of advertising provided for, and pursuant

to an order received from the defendant under such contract it shipped to it certain goods of the value of $672, which were received and retained by the appellee. That the advertisement of said medicines was begun in the Journal and Tribune (of Sioux City) and continued for a long time, and plaintiff says that it has complied with all the provisions of the contract and has never consented to its cancellation. It charges that defendant has without cause violated the terms of the contract in causing the advertising to be discontinued December 10, 1908, and in refusing to honor drafts for goods sent, and in failing to make all payments by March 4, 1909, when all became due. Judgment is asked for the value of the goods shipped and also for the expenditure for advertising made by plaintiff under the contract.

In a second count of the petition estoppel and acquiescence is pleaded against the defendant, based upon the allegation that, with full knowledge of the acts performed by plaintiff under the contract, defendant co-operated with it in placing the goods on sale, and that plaintiff, at the request of defendant, furnished advertising matter to customers of defendant making application therefor.

By way of answer the defendant denied that it had signed the contract in suit and admits that plaintiff shipped to it a large amount of merchandise, which defendant avers it has offered to return to plaintiff, and that such offer has been continuous, and that said goods are held by it at the disposal of plaintiff. It says that it signed a contract similar to the one sued upon but not the one sued upon, for the word "Iowa" before the words "advertising contract," as now appears, was not in the contract signed by the defendant; that the word "Iowa" has been inserted since it was signed by the defendant; that such was done without the knowledge or consent of the defendant and was fraudulently and willfully done, and that it never ratified or consented to such act. Defendant avers that such constituted a material alteration of the contract and destroyed its validity. That upon dis-

covery of the same the defendant immediately objected to the alleged contract. By reason of such facts defendant denies all liability. As a counterclaim defendant seeks recovery for freight paid on the goods received by it.

In reply the plaintiff denies that the word "Iowa" was not in the contract at the time it was signed by defendant's president and denies that any one authorized by it willfully or fraudulently altered the same as charged, without knowledge, consent, or ratification thereof by defendant. Denies that any change was made after execution and delivery.

There was a trial to a jury, resulting in a verdict against plaintiff on its claim and in favor of the defendant on its counterclaim.

II. The main question presented by this appeal is upon the claim that, after the execution of the contract in suit, it was materially altered without the knowledge or consent of the appellee, and incident to that whether, if changed, there was acquiescence in such by the appellee. By the pleadings no question is raised, but if the change was made it was a material one, unless it be in the general denial which is a part of the reply. We will, however, consider that question upon its merits. If the contract when signed by the appellee was without the word "Iowa" preceding the words "advertising contract," in the light of its other provisions referring to the Tribune and Journal, the contract having been executed in Sioux City, a fair construction would be that all the advertising provided for should be in those papers, which circulated in the immediate locality where the appellee conducted its business, and was to be concluded in twelve months following the execution of the contract. In other words, it fixed the term of the contract between the parties as one year, and their mutual obligations were to be determined in that time, and at the expiration of the period the appellant was bound to take back at invoice price the unsold goods. By the insertion of the word "Iowa" the obligations and rights of the parties were

1. CONTRACTS: construction: alteration: materiality.

made to depend, not upon the contract with the Sioux City newspapers, but upon such Iowa advertising contracts as appellant might have. That this construction was placed upon it by the appellant is evident from letters written by the appellant to the appellee after controversy arose concerning the alleged change. In one it is stated: "The demand in our regular territory is such that it has proven to us that it would be well to extend our operation. Hence our work in the western states. This is just a part of the campaign." And in a later letter it states: "As it stands, your default has deprived you of any right to demand advertising or any form of guaranty that the goods may be returned when our Iowa campaign stops." Also in his testimony Mr. Ellis, manager of the plaintiff company, testified: "The extra clause in Exhibit B regarding publishing in 'Iowa' papers means that, after we have given them the agreed amount of advertising as stated in Sioux City, we would continue to advertise in the large papers of the state." From this it is a fair conclusion upon this branch of the case that the appellee in its correspondence and in the quoted testimony recognized the word "Iowa" in the contract as being of material importance to it, and, in its replies to the appellee's letters in which it was claimed that the altered contract was without definite provision as to its time of termination, the appellant took no different grounds but insisted that the rights of the parties should be measured by the contract as claimed by it. The trial court in its instructions submitted to the jury the question of fraudulent alteration and also left for its determination the question whether, if altered, it was a material change. In this error is charged.

While the general rule is that the construction of written instruments is a duty of the court, and that whether an alteration is material or otherwise is a matter of law, and while in the present case the court might properly have instructed that under the undisputed facts the change, if made, should be held to be a material one, yet in submitting that question to

the jury no possible prejudice resulted to the appellant.  A finding that it was not material would have been in its favor. A finding that it was material could be no stronger than the construction which the law would place upon the change, if made.

III. There was, ·as indicated by the issues raised, sharp dispute over the question as to whether the contract had been altered in the respect claimed after it had been signed by the appellee.  This, among other questions, was submitted to the jury.  As to this error it is claimed by appellant, that such submission was under evidence which showed no more than a mere opportunity to change, and that from such no proper finding of such a change could be had.

In this case the contract sued upon did not indicate on its face that it had been altered, the alleged material change being in the insertion of the word "Iowa" in a blank left for some such purpose.  The trial court in-

2. SAME: fraud: burden of proof: evidence.

structed the jury in instruction No. 8 that the contract bore "on its face no evidence of alteration nor of the time when it had been altered, if such was done, and that therefore there was no legal presumption that it was altered by plaintiff or any one for it after execution and delivery."

In the same instruction the jury was told that the burden of proving alteration after delivery was upon the defendant to show that plaintiff, through some one acting for it, willfully and fraudulently altered the contract after execution and delivery to the defendant, without the knowledge or consent of the defendant.

Instruction No. 9 stated the correct rule "that fraud is never presumed but  .  .  .  may be established by direct proof or from facts and circumstances' connected with the transaction from which fraud reasonably may be inferred." There was no direct proof as to when and by whom alteration was made, if made, excepting the testimony of the president of the appellee that the word "Iowa" was not in the contract

when it was signed by him, and that he noticed the unfilled blank, and that when a copy of the contract, which had been sent to appellant for approval, was returned to the appellee the blank was filled, and upon discovery of the same immediate objection was made. True, this was denied by Mr. Murphy, the agent of the appellant who conducted the transaction; but a question of fact was presented for finding by the jury.

And the proof of the fact did not, as contended by appellant, depend upon a presumption based upon mere opportunity. It was not disputed that Mr. Murphy was the agent of the appellant in the particular matter then in hand. He received from the appellee, when it was signed, the contract in whatever condition it may have been. It is next found in the possession of appellant, by whom a copy was sent to the appellee. There is no claim that it was at any time out of the possession of Mr. Murphy or his principal, affording opportunity for it to be altered by others.

Such proof is of circumstances which, if unexplained, would warrant a jury in finding that the alteration was made by the appellant or by its agent after it was signed by the president of the appellee, if credence was given to his testimony. The instructions given are not open to the objection made by appellant.

IV. The contract upon which appellant relies is dated September 4, 1908. On September 7th the appellant wrote to the appellee stating among other things: "We are herewith inclosing you an exact copy of order and contract, and if they compare identically with the ones left with you by Mr. Murphy, the same are accepted by us." Mr. Todd, the president of the appellee company, testified that, at the time of signing the contract with Mr. Murphy, the latter handed him a folded paper with the remark, "Here is your copy;" and, supposing it to be all right, he laid it on his desk with a pile of letters. Upon receiving the letter of September 7th, which the witness testifies was during fair week, he put it on his desk, without reading, and laid it aside to go over

carefully at a later time.   He testifies that later, when taking
up his delayed work, he read the copy sent to him by the
appellant and discovered that there was a difference, which
made a meaning entirely different from his understanding
with Mr. Murphy.  He then looked at the copy given him by
Mr. Murphy, and which he testified he did not read at the
time it was handed to him, and saw that in it the blank had
been filled with pen and ink.  Upon such discovery the witness
states he wrote to appellant October 9, 1908, copy of the letter
being introduced in evidence, in which the understanding
claimed to have been had with Mr. Murphy as to the period
of the contract was given, and stating that if appellant claimed
that the time covered by it was indefinite, and not for one
year, the goods already shipped were held at the disposal of
appellant.  Following this was much correspondence contin-
uing up to December 8, 1908, which resulted in no abatement
of appellant's claim nor no concession by the appellee.  During
the progress of the trial objection was made to testimony
of this nature and also as to the testimony of conversations
between Mr. Todd and Mr. Murphy, prior to the signing of
the contract, relating to the period to be covered by it.

· To sustain the charge of material and fraudulent altera-
tion, testimony was competent which tended to show what the
agreement actually was. 17 Cyc. 695.  It would not be com-
petent to thus show that a contract sued upon

3. SAME: evi-
dence.

was intended in a different sense from its
terms, but it was competent when fraud was charged, the
effect of which under the law would be that there was no
contract, to show that the agreement between the parties was
as actually signed.  The letters referred to the agreement as
claimed by appellee and were, when taken most strongly
against the appellee, an offer to abide by the contract as
claimed by it to have been made and a refusal to recognize it
in its altered condition.  There was no error in admitting
such evidence.

V. It is claimed the trial court erred in submitting the question of estoppel to the jury as one of fact. Whether the appellee acted with that diligence which the law requires in repudiating the contract as claimed by appellee, after discovery of the alleged alteration, and whether it permitted the appellant without objection to ship goods to the appellee, after the latter had knowledge that the word "Iowa" was in the contract, were proper questions of fact. From this record, with the dispute in fact and from the attendant circumstances, the trial court could not properly have instructed that there was an estoppel.

VI. Over the objection of the appellant, one P. B. Myers, of the Myers-Dillon Drug Company, of Omaha, testified that in 1908 his firm signed a written contract with the Hessig-Ellis Drug Company for the handling of the Cuban Hair Restorer and Tonic, and that there was a typewritten clause at the bottom. From the nature of the questions then asked, we assume that appellee's counsel by further inquiries sought to show that the typewritten clause was similar to that on the contract in suit; that it had a blank at the place used in inserting the word "Iowa" in this paper; and that after his transactions with appellant the witness discovered that the blank had been filled subsequent to its execution. Upon objection this testimony was excluded.

The deposition of R. R. Ellis, manager of the appellant company, was read in evidence. On cross-examination inquiry was made of him as to transactions with other persons or companies which it was claimed had resulted in differences and litigation. The trial court did not admit the answers, but prejudice is urged because of alleged misconduct of counsel for appellee in reading the suggestive interrogatories in the presence of the jury. We cannot hold such as misconduct warranting a reversal in the light of the rulings and remarks of the trial court made at the time of the offer and exclusion of such testimony.

VII. It is urged that the verdict is contrary to instruction No. 8. We have considered this instruction in another paragraph of this opinion. It properly stated the law, and the facts were in such dispute that their determination could be made only by the jury.

VIII. Instructions offered by the appellant were refused. They presented a theory of the case, under the evidence, which was not in harmony with that adopted by the trial court nor with what we conclude to be the law governing the case. We have considered the instructions given in connection with those offered by appellant and are of opinion that there was no error in refusing to give the offered instruction, nor was there error in the instructions given.

IX. Misconduct of counsel for the appellee in commenting upon the witness Murphy is urged as prejudicial and calling for a reversal. The record fails to show such fact in the manner required. It is alleged in the motion for new trial, but otherwise there is no showing in the record upon that subject. In other words, there is only averment of the fact, but no proof or record is preserved by bill of exceptions. That is insufficient. Code, section 3751; *Everett v. Central Iowa Ry.*, 73 Iowa, 442; *Gray v. C., M. & St. P. Ry.*, 75 Iowa, 100.

4. NEW TRIAL: record: review.

X. At the close of the testimony plaintiff (appellant) moved for a directed verdict against defendant (appellee) on its counter-claim. Such was denied and error is charged. If there was such a material and fraudulent alteration as to vitiate the contract, then goods shipped to the appellee under it were entirely at the risk and expense of the sender, unless they were accepted by the consignee after knowledge of the alleged fraudulent alteration. This was one of the questions in dispute, and the motion to direct a verdict was properly overruled.

XI. Appellant's motion for new trial was overruled, and error is claimed in so doing. It presented the alleged errors.

which have been considered in this opinion. Holding as we now do, there was no error in overruling such motion.

The judgment of the trial court is *Affirmed*.

WEAVER, C. J., and DEEMER and PRESTON, JJ., concur. GAYNOR, J., taking no part.