FIRST NATIONAL BANK OF HAWKEYE, Appellee, v. S. S. PATTERSON, Appellant.

**TRIAL: Reception of Evidence—Admissions Contradictory of Defense.** An admission by a defendant contradictory of his pleaded defense may very properly be considered in weighing the truthfulness of his defense, and the court may instruct accordingly.

**BILLS AND NOTES: Alteration—Failure to Explain.** Defendant in an action on a promissory note has no right to a sweeping instruction to the effect that plaintiff's failure to explain an alteration, irrespective of its nature, raises a presumption which vitiates the note.

**TRIAL: Inapplicable Instructions.** Instructions on a theory without support in the evidence are properly refused. So held on the issue of alteration in a promissory note.

*Appeal from Fayette District Court.*—W. J. SPRINGER, Judge.

MAY 11, 1920.

Action on two promissory notes, given as a combination paper. The opinion states the facts, and the defenses urged. Judgment for the plaintiff in the district court. Defendant appeals.—*Affirmed.*

*Ainsworth & Antes,* for appellant.

*E. H. Estey,* for appellee.

Gaynor, J.—This action is upon two promissory notes, each dated October 15, 1917, and each for the sum of $500. These notes were signed by one W. E. Heiserman and by the defendant, S. S. Patterson. Patterson alone, the defendant, appeals, and he interposes two defenses: (1) That the notes were altered in a material matter after their execution; and (2) that the plaintiffs are not the holders of the notes in question "in due course."

The defense that the notes were materially altered, was based upon the following alleged facts: That though, at the time the notes were executed by this defendant and Heiserman, the name of the payee was blank, yet, at the time the notes were delivered to the plaintiff, the name of the plaintiff was filled in as payee, and the plaintiff, without the knowledge and consent of this defendant, and in violation of the authority given to Heiserman, erased its name as payee, and substituted the name of Emma Heiserman. This is what defendant says was done, and on this he bases his claim.

The second defense is based on the following claim: That he signed these two notes, with the name of the payee blank, with Heiserman, with a distinct understanding and agreement that one of them was to be used in liquidation of an outstanding debt in the sum of $500, and the other, to secure an additional loan of $500, for the purpose of paying certain wholesale debts of Heiserman's; that, as a matter of fact, both of the notes were negotiated as collateral

security for money borrowed by the Heisermans from the plaintiff; that the negotiation to the plaintiff as collateral was without authority, and carried no liability against the defendant.

The case was tried to a jury, and a verdict returned for the plaintiff for the full amount of the notes.

There is no controversy in this case as to the signing of the notes, and as to the condition of the notes at the time they were signed by defendant. The name of the payee was then blank. The jury could well find, under this record, that, at the time the defendant signed the notes, he authorized Heiserman to negotiate them and to fill in any name as payee that he found necessary, in order to make them effectual for the purposes for which they were executed; that, when the defendant signed these notes and left them with Heiserman, there was authority on the part of Heiserman to procure money upon the notes to the amount of the notes; and further, that the source from which the money was to be obtained was not determined, as between the defendant and Heiserman, before or at the time the notes were signed and delivered to Heiserman to be negotiated. The record discloses that the notes were signed, and left by defendant in Heiserman's possession; that, without filling in the name of any payee in these notes, Heiserman went to the plaintiff bank, exhibited the notes, and told them that he desired to get money on them; that, before the notes were negotiated, and before any money was paid by the plaintiff upon the notes, Heiserman placed the name of this bank (plaintiff) as payee in the notes; that the notes were then brought to this bank, and the plaintiff refused to accept them with its name as payee. Thereupon, with the consent of Heiserman and his wife, its name was erased from the notes, and the name of Heiserman's wife placed in the notes, and she thereupon endorsed the notes in the following language:

"For value received, I hereby guarantee the payment of the within notes, waive demand, notice and protest.

"[Signed]   Emma Heiserman."

Thereafter, the notes were negotiated to this plaintiff, and the plaintiff paid to Heiserman the full amount of the notes.

There is dispute as to these facts as we have recited them, but the jury could well have found the facts to be as we have stated them. But there is no dispute that the notes were not negotiated to the plaintiff or accepted by. the plaintiff until they were completed by the insertion of the name of Emma Heiserman in said notes as payee. They were not negotiated to nor accepted by the plaintiff until after Emma Heiserman had endorsed the notes to it, as hereinbefore set out.

There is no contention made by the defendant that the evidence is not sufficient to justify the verdict, nor is it contended that there was not evidence to support the special findings of the jury upon the disputed points. The court submitted to the jury special interrogatories as follows:

"(1)   Did the defendant, S. S. Patterson, authorize W. E. Heiserman or the First National Bank of Hawkeye (plaintiff) to use the two notes sued upon as collateral security for the indebtedness of Emma M. Heiserman?

"(2)   Did the defendant, S. S. Patterson, authorize W. E. Heiserman, or the First National Bank of Hawkeye (plaintiff), to use the name of Emma M. Heiserman as payee in the notes sued upon?"

Both of these questions were answered by the jury in the affirmative, and a verdict was returned for the plaintiff for the amount of the notes.

While, upon this record, many questions might have been raised, touching the liability of the defendant upon the issues made and the evidence submitted, the defendant based his right to reversal upon two propositions only:

(1) That the court erred in the fifth instruction given to the jury; (2) that the court erred in refusing to give to the jury the first and sixth instructions asked by the defendant.

The fifth instruction complained of is in these words:

"The defendant, Patterson, admits upon the stand that, after said notes were signed and delivered to the plaintiff, he offered to pay said notes, but says that, at the time the offer was made, he had not seen the notes, and did not then know their condition. If you find from the evidence, the burden of proof being on the plaintiff to show, that defendant did make the admissions, by a preponderance of the evidence, that defendant knew the condition of the notes, and in what way plaintiff had them when he made the offer to pay, then you will consider this is an admission of this defendant that plaintiff was the rightful owner and holder of said notes, and that he was liable thereon, and you will take this admission into your consideration while weighing the evidence. On the other hand, if you find that defendant did not know the condition of the notes at the time, or how plaintiff held the same, you will disregard the admissions made by defendant, Patterson, and will not give them any weight as against him."

1. TRIAL: reception of evidence: admissions contradictory of defense.

The theory of the defendant, in complaining of this instruction, as stated in his brief point, is that, by this instruction, the court injected an issue into the case that was not there; that the plaintiff had not pleaded either ratification or estoppel; and that this instruction told the jury that, if the plaintiff made an admission such as the instruction refers to, and such as the evidence shows he did make, that would be a ratification, and estop the plaintiff from pleading the defenses which he urges. A mere reading of the instruction shows that this objection was not well taken. The court practically said to the jury that they might consider his admission if they found it was made as claimed,

practically saying to them that his admission, if inconsistent with what he testified to on the stand, touching the execution of the note, would have some weight in determining the weight to be given to the testimony which he had given on the trial. The plaintiff's evidence tended to show that, on the 5th day of November following the execution of the note, Patterson was in plaintiff's bank; that the notes were exhibited to him; that they were then in the same condition that they are now in; that the defendant made no objection to the notes, but said that he would pay them, and asked that they be sent to another bank for payment. If the testimony of the plaintiff is true, that, after they were negotiated to and in the possession of the plaintiff, the defendant saw the notes, and knew just how they were drawn, and, with knowledge of the then condition of the notes, made no objection to the form in which they were written, and promised to pay them, this certainly would be an admission which had some probative force in negativing the testimony now given, that he never authorized the notes to be drawn in the form in which they were, and never authorized them to be negotiated to this bank. If the plaintiff's testimony is true,—and it was for the jury to say whether it was or not,—the defendant was fully informed of the character of the transaction that resulted in the negotiation of these notes to it, knew of the indebtedness for which they were pledged, and the extent of that indebtedness, knew the form in which the notes were drawn, made no objection, and thereafter promised to take care of the same. This certainly was proper evidence for the jury to consider, in determining the ultimate question in dispute, and that is all that the court said to the jury. It did not tell them that the plaintiff, by this, ratified an unauthorized act, nor did it say that the plaintiff was estopped from asserting the claims which it now makes. It was evidence tending to show that the negotiation of the notes to the

plaintiff was authorized, and inferentially tended to show that the defendant did not then regard the notes as not binding upon him. All the court said was that this admission had probative force, if the jury found that he made the admission, when they came to consider and weigh the whole evidence upon the issues tendered.

In reviewing this case, we confine ourselves to the errors assigned. While other questions might have been raised, they are not here for our consideration. There was no reversible error in the giving of this instruction.

The first instruction asked, the refusal to give which is complained of, is this:

"The court instructs the jury that the law imposes upon the party offering a paper in evidence
2. BILLS AND NOTES: alteration: failure to explain.
the explanation of any alteration which may appear therein; and therefore, if the jury believe, from the evidence, that any alteration has been made in the note in question, the burden of proof is upon the plaintiff to explain the same, and, unless the jury believe, from the evidence, that such alteration has been explained by the plaintiff, the presumption of the law is that it was made by the plaintiff, and the jury *should find for the defendant.*"

This instruction could not have been given in the form in which it was asked. The instruction says that, where an alteration appears upon a paper, and no explanation is made of the alteration, there is a presumption that it was made by the plaintiff fraudulently, and that that, in itself, destroys the contract, and justifies the jury in finding for the defendant. The alteration may have been made by the consent of the parties. It may have been made under such circumstances as would be justified. Thus, Section 3060-a14, Code Supplement, 1913, provides:

"Where the instrument is wanting in any material par-

ticular, the person in possession thereof has a prima-facie authority to complete it by filling up the blanks therein."

This instruction would destroy that statutory right, if enforced as presented by the defendant. While it may be true that, in case of a material alteration appearing upon the face of a paper, made after delivery, the burden of explaining or justifying the alteration is on the person claiming under it, and while it may be assumed that the alteration was made by the plaintiff, yet the fact that an alteration appears, without showing that it was a material alteration, made after delivery, would not defeat recovery, even though made by the plaintiff.

We think there was no error in refusing to give this instruction in the form in which it was drawn.

The sixth instruction asked by the defendant is as follows:

"You are instructed that delivery of the notes sued upon would be complete, upon the placing of the same within the *power* or *control* of the plaintiff, for his use and benefit, with the intention of giving them effect and operation according to their terms; and if you find from the evidence that there was such *delivery* to plaintiff, and that plaintiff or anyone else thereafter made a material alteration of said notes, then your verdict must be for the defendant, Patterson."

3. TRIAL: Inapplicable instructions.

The Heisermans were not witnesses in this case, and what was done at the time these notes passed into the plaintiff's hands is shown only by the testimony of the plaintiff's officers, who transacted the business for the plaintiff in the taking of the notes; and this testimony shows the following facts:

L. E. Bopp, cashier of the plaintiff bank, testified:

"I had a conversation with Patterson, in which he stated that he signed the notes in blank, so we could fill in

whatever name we wished as payee. Before the notes were
· executed, about five days before they were executed, the
bank had a deal with Heiserman, with reference to making
him a loan. Shortly before the 15th of October, the day
on which the notes were signed, Heiserman came to the
bank with these two notes. At that time, the name of the
payee was blank. In other respects, they were the same
as they are now. After the notes were brought to the bank
the first time, they were returned to him. He was to go
home to get a description of the property, so that I could
execute the papers for him to sign. When I first saw the
notes, they were signed by W. E. Heiserman and the defend-
ant, Patterson. I sent my brother for the papers, and he
brought them back. They were all in a bundle. The plain-
tiff's name was inserted in the notes at that time. Heiser-
man had written in the name of the First National Bank of
Hawkeye, as payee. It was not in accordance with the
agreement we had with him. Heiserman was called in, and
wanted to take a pen and run through the name 'First Na-
tional Bank' and write in the name of Emma M. Heiser-
man. I told him not to do it; that I would take it out with
an ink eraser, and would write the payee's name in with
a typewriter. I took the name ont, and inserted the name
of Emma M. Heiserman as payee. At that time, W. E.
Heiserman and his wife, Emma, were making arrangements
to borrow money from our bank. W. E. Heiserman was
there at the time, and I was in the bank when Emma M.
Heiserman made the written endorsement on the back of
each of the notes. In consideration of the execution and
delivery of these two $500 notes, and this $1,900 note, I
made a loan to William E. Heiserman and Emma M. Heis-
erman of $1,000. This was in consideration of a receipt by
the bank of these $500 notes. The loan was made on the
16th."

It is apparent that the plaintiff bank refused to accept

the notes with its name as payee therein. It is apparent that the bank's name was erased with the knowledge and consent of Heiserman and his wife, and the name of the wife inserted in the blank space left for the name of the payee. The notes were then completed for the first time. They were negotiated to the plaintiff, with the name of the wife as payee. She endorsed and guaranteed the payment of the notes to the bank. The bank did not become the owner of the notes, or have any right, title, or interest in the notes until after the endorsement made by the wife, and the transfer of the notes to the bank. There is absolutely no evidence on which to base the instruction involving the thought that "the notes were placed within the power and control of the plaintiff for its use and benefit," with the intention of giving them effect and operation in accordance with their terms, before the defendant's wife's name was inserted as payee, and before they were endorsed and delivered by her to the bank. There is no evidence upon which the claim could be predicated that the plaintiff, or anyone else, after the notes were placed "in the power and control of the plaintiff bank, for its use and benefit with the intention of giving them effect and operation in accordance with their terms," altered these notes. The erasure of the plaintiff's name, which was inserted there without authority, and the insertion of the name of Heiserman's wife, were made before the notes were negotiated, before they passed into the hands of the plaintiff, "with the intention of giving them effect and operation according to their terms." Instruction 6, asked by the defendant, is not applicable to the facts disclosed in this record. Instead of enlightening the jury as to the rights of the parties in this controversy, it would have been confusing and misleading. We think the court was right in refusing it.

There is no complaint made of any instructions given, except Instruction 5, hereinbefore set out, and no error is

predicated on any thought that the court did not fully instruct the jury on every question involved in this controversy. The complaint is only of the refusal to give the instructions asked. If these instructions were not proper to be given to the jury, then we have no complaint here made by the defendant that justifies us in interfering with the verdict of the jury.

The grounds presented here for reversal do not justify us in interfering with the action of the court below, and the cause is—*Affirmed*.

WEAVER, C. J., LADD and STEVENS, JJ., concur.