MONONA COUNTY, Appellee, v. J. A. GRAY et al., Appellants.

**DRAINS:** Action on Bond—Violation of Conditions—Good Faith of
1 Board. The fact that not all signers of a petition for a drainage improvement *signed the bond*, in accordance with an agreement between the parties who initiated the proceedings, will not affect the enforcibility of the bond, when the bond was received and accepted by the county in good faith and without knowledge of said agreement and of the violation thereof.

**DRAINS:** Action on Bond—Conditional Signing—Knowledge of Board.
2 Knowledge on the part of a member of a board of supervisors (1) of the conditions on which sureties signed a drainage improvement bond, and (2) of the violation of such conditions, will not be imputed to the county in accepting the bond, when said member of the board was a landowner within the proposed district, and therefore *wholly disqualified*, under the statutes, to act in the proceedings.

**DRAINS:** Action on Bond—Estoppel. Sureties on a drainage improve
3 ment bond are estopped to plead nonliability on the bond *because the*

*conditions on which they signed had been violated,* when they filed the bond, or caused it to be filed, with knowledge, or with ready means of knowing, that said conditions had been violated, and stood by in silence while the county, at large expense, acted thereon.

**ALTERATION OF INSTRUMENTS:** Burden of Proof. The plea of alteration of an instrument will be disregarded, in the absence of evidence by the pleader not only that the alteration was *material,* but that it was made *after delivery.*

**DRAINS:** 'Action on Bond—Unallowable Defense. In an action on a drainage bond conditioned to pay all expenses incurred by the county in case the district be not established, the plea that the survey departed from the plan proposed in the petition will be disregarded (1) when the petition was unusually comprehensive in its proposal, and assumed to and did invest the board of supervisors with full statutory jurisdiction over the proposal, and (2) when the survey was not beyond the call of the statute.

**DRAINS:** Action on Bond—Evidence—Immateriality. In an action on a drainage bond conditioned to pay all expenses incurred by the county in case the district be not established, testimony to the effect that the engineer, after his employment, *estimated* the cost of the contemplated survey at a certain amount, is immaterial.

**APPEAL AND ERROR:** Assignment of Errors—Fatal Indefiniteness. In an action by a county to recover some seventy different items of expense accruing under a bond given in an abortive drainage proceeding, an assignment ''that the court erred in receiving testimony of the bills of the engineer without further proof than that the bills were filed, audited, and paid, because the bills revealed invalidating irregularities,'' is fatally indefinite. (See Book of Anno., Vol. 1, Sec. 12869, Anno. 37 *et seq.*)

**DRAINS:** Action on Bond—Sufficiency of Proof. In an action by a county to recover, on a bond given in an abortive drainage proceeding, for items paid by the county, proof of the due audit and payment of the claims by the county authorities is conclusive, in the absence of proof of fraud.

**DRAINS:** Establishment and Maintenance—Interested But Nondeciding Vote. Drainage proceedings are not rendered illegal by the nondeciding vote of a supervisor who is financially interested in the proposed improvement. (See Book of Anno., Vol. 1, Sec. 7421, Anno. 7 *et seq.*)

Headnote 1: 19 C. J. p. 647 (Anno.); 32 Cyc. p. 45. **Headnote 2:** 19 C. J. pp. 638, 647 (Anno.) **Headnote 3:** 19 C. J. p. 647 (Anno.) **Headnote 4:** 2 C. J. pp. 1191, 1272 (Anno.), 1275, 1276. **Headnote 5:** 19

C. J. p. 677.  Headnote 6:  19 C. J. p. 677.  Headnote 7:  3 C. J. p. 1370.  Headnote 8:  19 C. J. p. 677.  Headnote 9:  19 C. J. p. 677.  Headnote 10:  19 C. J. p. 638.

*Appeal from Monona District Court.*—A. O. WAKEFIELD, Judge.

NOVEMBER 24, 1925.

THE action is by the county against the sureties on a bond conditioned for the payment of all costs and expenses incurred in connection with a petition for the establishment of a drainage district in case the district was not established.  From judgment on a directed verdict for plaintiff, defendants appeal.—*Affirmed.*

*J. A. Prichard, C. E. Cooper,* and *George E. Allen,* for appellants.

*Underhill & Miller* and *Jepson, Struble, Anderson & Sifford,* for appellee.

VERMILION, J.—The appellants, with others, were signers of a petition to the board of supervisors for the establishment of a drainage district.  The appellants signed a bond in the sum of $6,000, conditioned upon the payment of all costs and expenses incurred in the proposed drainage proceedings petitioned for, in the event that the prayer of the petition should not be granted by the board of supervisors.  The drainage district was not established; and this action is by the county upon the bond, to recover the amount alleged to have been paid by the county in costs and expenses so incurred.

The cause was tried to a jury, and, at the conclusion of all the evidence, the court overruled the motion of the defendants for a verdict in their favor, and sustained the motion of the plaintiff for a verdict for the amount of the bond, less $750 that had been paid by certain signers of it, and interest.  The total cost and expense alleged by the plaintiff to have been paid in connection with the proposed project was $6,334.18, or $334.18 in excess of the amount of the bond.

The defenses presented by appellants, briefly stated, were:
1.  An agreement that all signers of the petition should sign

the bond. 2. That the bond had been mutilated by the removal of certain signatures. 3. That the engineer employed to make the preliminary survey departed materially from the project proposed by the petition. 4. That the amount claimed was in excess of the reasonable cost of a proper preliminary survey, as contemplated by the petition.

I. In respect to the claimed agreement that all who signed the petition should sign the bond, there is testimony tending to show the following facts: That the petition and bond were pre-pared in triplicate for circulation in different localities for signature; that, at a meeting of parties interested in promoting the project, and attended by some eight of the thirty-nine signers of the bond, it was stated that no one should be allowed to sign the petition who did not also sign the bond; and that instructions to that effect were given the persons who circulated the papers for signature. The signers of the bond present at that meeting testified that they would not have signed the bond, but for such agreement. Some twelve persons signed the petition whose names are not on the bond.

1. DRAINS: action on bond: violation of conditions: good faith of board.

It is well settled that, where a bond is delivered in violation of the condition upon which it was signed by the sureties, the plaintiff may recover thereon if it is shown that the bond was received in good faith, for a sufficient consideration, and without knowledge or notice of the condition upon which it was signed. *Benton County Sav. Bank v. Boddicker,* 105 Iowa 548, and 117 Iowa 407; *Novak v. Pitlick,* 120 Iowa 286.

It is shown that Marquis, a member of the board of supervisors, was present at the meeting, and had actual knowledge of what was there done. He was, however, the owner of land within the proposed district, and was disqualified to act as a member of the board of supervisors in passing upon the petition. *Stahl v. Board of Supervisors,* 187 Iowa 1342. In *Morgan v. Fremont County,* 92 Iowa 644, the rule was laid down that:

2. DRAINS: action on bond: conditional signing: knowledge of board.

"Whether notice to a public officer is notice to the corporation of which he is an agent depends upon the nature and extent of his powers. If the notice pertains to a matter concern-

ing which it is his duty to act, then, as a general rule, notice to him is, in law, notice to the corporation.''

Marquis, being disqualified, by reason of his interest, to act as a member of the board of supervisors upon the question whether the drainage district should be established, obviously had no duty to act in the matter on behalf of the county. Moreover, his presence at the meeting in question was clearly prompted by his personal interest in the success of the project, and this was opposed to the interest of the county in securing a bond to indemnify it for the expense incurred if the district should not be established. Notice to an agent whose interests in the matter in hand are antagonistic to those of his principal is not notice to the principal. *Findley v. Cowles,* 93 Iowa 389; *Van Buren County v. American Sur. Co.,* 137 Iowa 490; *Barnes v. Century Sav. Bank,* 165 Iowa 141; *Watt v. German Sav. Bank,* 183 Iowa 346. We are of the opinion that the knowledge of Marquis is not, under these circumstances, to be imputed to the county.

While the burden was upon the appellee to establish that it took the bond in good faith and without notice of the alleged agreement of the sureties, or knowledge sufficient to put it upon inquiry, we think it fully sustained that burden, and that there were no facts or circumstances shown in evidence requiring the submission to the jury of the question of notice. *First Nat. Bank v. Dutton,* 199 Iowa 468, and cases cited.

But, at all events, it is clear that appellants are estopped to rely upon the claimed agreement for the purpose of escaping liability on the bond. They were all petitioners for the establishment of the drainage district. While it is

3. DRAINS: action on bond: estoppel. not shown who actually presented and filed the petition and bond in the auditor's office, they were presented together, in the interest of the petitioners. The bond was an essential preliminary to action on the petition. Section 1989-a2, Code Supplement of 1913 (Section 7430, Code of 1924). It was accepted as such. The petition was acted on, and a large expense incurred and paid by the county in reliance on the bond. The bond was wholly in appellants' hands until it was filed. When they filed it, or caused it to be filed, for the purpose of securing action on their petition, and thereby induced

the county to act, and expend money in reliance upon it, it does not lie in their mouths to say that, by a secret agreement among themselves, of which the county had no notice, the bond was to be signed by all the petitioners before it should be delivered and filed and they became liable thereon. *Helwig v. Fogelsong,* 166 Iowa 715. Nor can appellants be heard to say, under such circumstances, that they did not know that the bond had not been signed by all the petitioners. It was their bond,— their act; they were both petitioners and signers of the bond. They had the fullest opportunity to know if it did not conform to the alleged agreement among themselves. Under such circumstances, the resulting estoppel is clear. *Sweezey v. Collins,* 40 Iowa 540; *McCormack v. Molburg,* 43 Iowa 561; *Ross v. Ferree,* 95 Iowa 604; *Marshall Field & Co. v. Sutherland,* 136 Iowa 218; *Phelps v. Linnan,* 174 Iowa 138. In *Theobald v. Hopkins,* 93 Minn. 253 (101 N. W. 170), it is said:

"If plaintiff could, by proper inquiry, have learned all the facts * * * and neglected to make it, and defendants were misled to their prejudice by his inaction, he would be estopped from afterwards asserting a claim against them."

II. The answer, after setting up the alleged agreement that all the signers of the petition should also sign the bond, proceeds as follows:

4. ALTERATION OF INSTRUMENTS: burden of proof. "That, if the names of all of the petitioners named, and who signed said petition, were obtained as signers to said bond, said bond has been mutilated and the names of a large number of the petitioners removed therefrom, and said bond is not now in its original condition as when filed, and these defendants would be called upon to pay a much larger share than would have been their just due. That, if said bond has been mutilated, it was done while in the custody of the said plaintiff, and plaintiff is responsible therefor. That, if said bond was filed without said signatures' having been added, as agreed upon, then the same was in fraud of these defendants, and without their knowledge and consent; and plaintiff is not entitled to recover thereon."

This presents no defense based on a claim that the bond was altered by the removal of any signature after its execution and before it was filed; but it is expressly averred that, if the

bond was mutilated, it was while it was in the custody of the plaintiff. No defense coming within the rule announced in *State v. Craig*, 58 Iowa 238, or *Johnson v. Cole*, 102 Iowa 109, is pleaded.

The evidence relied upon to sustain the defense of a material alteration is testimony tending to show that one Craven signed the bond, and that his name does not now appear thereon, and that two sheets have been removed from the packet or bunch of papers fastened together, and consisting of the bond and petition. This packet of papers has been certified to us. It consists of two complete and identical petitions and the last page of a third petition, all bearing signatures, and two identical bonds, with signatures on each. We may say here that there is no contention but that these several copies of both the petition and bond constituted, in effect, a single petition and bond. For convenience, we shall refer to them as copies. There is no evidence that either of the sheets so removed contained a copy of the bond, or Craven's signature to the bond, or, indeed, that anything whatever was written or printed upon them. The position of the sheets, fastened between copies of the petition and bond, and under a single cover, would, perhaps, indicate that they had been intended for signatures to the petition. Blank sheets of this character are in the packet. The copies of the bond on file present no indication on their face of any erasure or alteration, except marks drawn through a name that appears elsewhere on the bond, and concerning which no question is raised. There is no evidence that any other persons except Craven signed the bond whose signatures do not now appear on it. There is no evidence as to who delivered the bond to the county auditor for filing, or that any examination was made of it before it was filed, or as to whether Craven's name was then upon it. There is no evidence whatever that the two sheets were torn out, or that Craven's signature was removed from the bond after it was filed. The auditor testified, and his testimony is uncontradicted, that, to the best of his knowledge, the petition and bond were in the same condition at the time of the trial as when delivered to him. There is testimony that the place where the bond was kept in the auditor's office was accessible to the public, but there is no testimony that anyone had in

fact had the bond. In short, the record is entirely destitute of any explanation whatever as to how or when Craven's signature was removed from the bond, or the two sheets were torn out, or what, if anything, they contained.

It is the settled rule in this state that an alteration apparent on the face of an instrument raises no presumption that it was made after delivery, and that the burden is upon the party alleging a material alteration to establish that it was made after delivery of the instrument. *Hagen v. Merchants & Bankers' Ins. Co.,* 81 Iowa 321; *Shroeder v. Webster,* 88 Iowa 627; *McGee v. Allison,* 94 Iowa 527; *University of Illinois v. Hayes,* 114 Iowa 690; *Tharp v. Jamison,* 154 Iowa 77; *Hessig-Ellis Drug Co. v. Todd-Baker Drug Co.,* 161 Iowa 535; *First Nat. Bank v. Patterson,* 188 Iowa 1237.

Where the instrument itself reveals the fact of an erasure, the burden is upon the one relying on such alteration to show that it is material. *University of Illinois v. Hayes,* supra. Mere proof that an alteration was in fact made, is not sufficient to cast upon the party relying on the instrument the burden to show that it was made before delivery; but it must be made to appear that the alleged alteration was made after delivery, before any presumption of fraud arises therefrom. *Tharp v. Jamison,* supra.

A statement in conflict with the rule laid down in the foregoing cases is found in *Kauffman v. Logan,* 187 Iowa 670. The question was not in that case, and what was there said was by way of argument merely. The earlier cases on the subject were not referred to. The *Kauffman* case has not been followed on this question in our later decisions, for, in *First Nat. Bank v. Patterson,* supra, we said:

"The fact that an alteration appears, without showing that it was a material alteration, made after delivery, would not defeat recovery, even though made by plaintiff."

To remove any doubt of the rule to which we adhere, the *Kauffman* case on this point is now expressly overruled.

The utmost that the testimony tended to establish, taking the view most favorable to defendants, was that the bond had been altered by the removal of Craven's name and the removal of two sheets from the packet of which the bond formed a part.

But, in the absence of any proof whatever that Craven's name was removed after the delivery and filing of the bond, or·that the sheets removed contained any material part of the bond and were removed after such delivery, there was no question here to submit to the jury. *University of Illinois v. Hayes,* supra.

III.   It is earnestly insisted that the plan or preliminary survey made by the engineer differed to such an extent from the plan proposed in the petition that the appellants cannot be held for the payment of the costs and expenses so incurred.

A reference to controlling statutory provisions, as found in Chapter 2-A of Title X, Code Supplement of 1913, in force· at the time of the proceedings in question, becomes necessary.

**5. DRAINS: action on bond: unallowable defense.** Section 1989-a2 provided, in substance, that, when a petition signed by one or more qualified landowners should be filed in the office of the county auditor, setting forth that any lands, intelligibly described, of the character or in the situation defined by the statute, would be benefited by draining, ditching, tiling, or leveeing, ·or by changing a natural watercourse, and there was filed therewith a bond, in amount and with sureties approved by the county auditor, and "conditioned for the payment of all costs and expenses incurred in the proceedings in case the supervisors do not grant the prayer of said petition," the board of · supervisors should appoint an engineer, and place a copy of the petition in his hands, and he should proceed to examine the lands described in the petition and any other lands which would be benefited by said improvement or necessary in the carrying out of said improvement, and survey and locate such drains, ditches, or improvements as might be practical and feasible to carry out the purpose of the petition.   The section further provided for a return by the engineer of his proceedings, and what it should show; that, upon the filing of the return of the engineer, if the plan did not appear to be expedient and was not approved by the board of supervisors, they were authorized to direct the engineer to report another plan; and that, at any time prior to the establishment of the district, the plan might be amended, and as amended should be conclusive, unless appealed·from.   It was further provided that, when the plan should be finally adopted

by the board, they should direct the auditor to give notice of the date set for hearing on the petition and report.

Section 1989-a5 provided that, on the date set for hearing, the board might, upon certain findings, establish the district or refuse to establish it, as they might deem best, and might order the engineer to make further examination and report.

Present statutes on the subject are found in Chapter 353, Code of 1924.

The petition in question, after describing the lands and their condition as respects the necessity for drainage, and stating that the required public benefits would be secured by their drainage, recited that these results might be "effected and accomplished by the following improvements' being constructed and established, which are suggested and recommended by the Bureau of Public Roads, U. S. Department of Agriculture." There followed a detailed description of thirty-eight distinct proposed improvements within the lands described, including the enlarging of three streams, the improving and cleaning out of existing ditches, the construction of a dam and waste banks, the closing of a ditch and river channel, and the construction of twenty-seven new laterals. The petition prayed that an engineer be appointed "to investigate, examine, and make a survey of the lands embraced within the proposed drainage district, and to make a full report in writing of his doings, * *. * and that such other proceedings may be had and done as are provided by law for the organization and establishment of a drainage district." It is apparent that the proposed improvement was of mammoth proportions. It was proposed to drain some 90,000 acres of land, at an estimated cost of more than two and a half million dollars.

There had been, prior to the filing of the petition, numerous surveys of the lands within the proposed district, one of which had been made by the Federal department of agriculture and was referred to in the petition. It is claimed by appellants that the petition contemplated a preliminary report by an engineer, based largely upon these former surveys, particularly the one made by the department of agriculture, and not a new and independent survey such as they claim was made; and they sought to show such an understanding with the board of supervisors

and the engineer. The sufficient answer to this contention is that the prayer of the petition was for the appointment of an engineer to examine and make a survey of the lands, and that such other proceedings be had as were provided by law for the establishment of a drainage district. Under the petition, the duty, and also the power, of the board were as broad as the statute. They were not—if they could be—limited to the particular improvements described in the petition, and could not be limited by any understanding of the parties' contrary to both the petition and the statute. We have said:

"The petition cannot be expected to be exact, as it is drawn prior to the survey, and is merely a preliminary paper. * * * Indeed, about the only office of the petition, aside from alleging the character of the land and the nature of the improvement, seems to be to point out the locality to be drained, in a general way, and to indicate those who are to give security for the preliminary costs and expenses to be paid in event the petition shall be rejected by the board of supervisors." *Zinser v. Board of Supervisors,* 137 Iowa 660.

See, also, *In re Drainage Dist. No. 3,* 146 Iowa 564.

The petition, doubtless due to the existence of the previous surveys, described in detail certain proposed improvements. But, as we have seen, the engineer was required by statute to survey and locate such drains, ditches, and improvements as might be practical and feasible to carry out the purpose of the petition. *Zinser v. Board of Supervisors,* supra.

We have said that, where the same engineer had made a previous survey for another district, and the district was intended to furnish an additional outlet for the old one, and the plat and field notes were still available, there was no occasion for a resurvey of the district. *Kelley v. Drainage District,* 158 Iowa 735. Here the evidence shows that many of the bench marks of the previous surveys were destroyed, and that cross sections of existing ditches would change, and that an engineer could not safely accept those made three years before. The complaint that a new survey was made is, we think, without merit.

After the engineer made his preliminary report, which was received and adopted by the board, they fixed a day for final hearing. The hearing was continued, to receive an amendment

to his report. After this was filed, the matter was referred back to the engineer for further investigation and report, and the hearing again continued. The engineer filed a substituted preliminary report, recommending changes in the district and improvements, and stating that the variations therein from his previous reports were not due to any revision of opinion on the engineering features involved, but were solely due to changes in financial and economic conditions. Further continuances were had from time to time, and finally, nearly three years after the filing of the petition, the board refused to establish the district.

We shall not extend this opinion by discussing the details of the reports made by the engineer. The chief contention of appellants in this connection is that, in the last report made by him, all lateral ditches were eliminated. This, as we understand, constituted the greatest variance between the plan of improvement as proposed in the petition and that recommended in any of the reports of the engineer. This, we think, was not a departure from the purpose of the proposed improvement, but merely a change of the plan by which that purpose was to be accomplished. It was the duty of the engineer to survey and locate such improvements as would be feasible to carry out, not the plan, but the purpose, of the petition. The board of supervisors was expressly authorized, if the plan proposed by the engineer did not appear to be expedient, to direct him to report another plan, and, if it deemed best, might, even after the adoption of the plan proposed by the engineer, direct him to make further examination and report. But by whatever plan it was proposed to proceed, the purpose was at all times the same as that contemplated by the petition,—the improvement by drainage of the lands described in the petition. Even the plan of the proposed improvement was not, broadly speaking, changed, save by the elimination of the proposed laterals, and that only because of the expense,—a consideration that entered into the question of expediency. Cases cited by appellants involving liability on contractors' bonds are not in point.

IV. The board employed one Moriarity as engineer, to make the preliminary survey and report, and entered into a written contract with him that he should receive $15 per day.

6. DRAINS: action on bond: evidence: immateriality.

and car mileage, and that the board would pay all help and assistance, Moriarity to employ the help at the lowest reasonable price, and all parties to pay their own expenses, except as otherwise stated. Appellants complain that they were not permitted to show that Moriarity, after his employment, gave an estimate of what it would cost the bondsmen, if the project was not carried out, and said that the preliminary survey would not cost to exceed $1,400. Such an estimate would not have been binding on Moriarity or the county, and the testimony was properly excluded. *Mosnat v. Uchytil*, 129 Iowa 274; *Lane v. Richards*, 119 Iowa 24.

V. Complaint is made of the character of proof offered to establish the various items of expense claimed to have been incurred and paid by the county in connection with the preliminary survey and the related proceedings. The only assignment of error touching this subject is "that the court erred in receiving the testimony of the bills and claims of the engineer as filed, without further proof than that the bills were so filed, audited, and paid, the evidence showing" alleged irregularities in the preparation of the claims and in the form of action taken by the board. The assignment is too general to require consideration of the proof with respect to specific claims. The itemized statement of amounts paid, attached to the petition, contained over seventy items. Proof of the audit, allowance, and payment of all of these claims was made. We have said, where reference was made in the assignment of errors only to the pages of the abstract where the alleged error appeared, that we could not be expected to search the abstract to ascertain whether error was committed in receiving testimony. *McAdams v. Davis*, 200 Iowa 204. Here the alleged errors are not pointed out with even that degree of particularity.

7. APPEAL AND ERROR: assignment of errors: fatal indefiniteness.

The records of the board of supervisors showed that the claims were audited, allowed by the board, and paid by warrant on the treasurer. In the absence of fraud, this was sufficient. *Griggs v. Kimball*, 42 Iowa 512; *Rock v. Rinehart*, 88 Iowa 37; *Warren County v. Slack*, 192 Iowa 275. There is in the answer an

8. DRAINS: action on bond: sufficiency of proof.

allegation of fraud on the part of the engineer; but no evidence was offered by appellants upon that issue, save as testimony that excessive car mileage was charged might so indicate. The amount so claimed to be excessive is not shown. The amount expended by the county exceeded the penalty of the bond by over $300, and it does not appear that the alleged excessive mileage could have affected the amount recoverable on the bond. Appellants argue that certain alleged irregularities in the claims themselves, under Section 1300, Code of 1897 (Section 5124, Code of 1924), and in the manner of their allowance, afford evidence of fraud. It has been held to the contrary, in the absence of other suspicious circumstances. *Griggs v. Kimball,* supra. We held in *Warren County v. Slack,* supra, where an inter-county drainage district had not been established, and the engineer had apportioned the expense among the counties and certified that the account was correct, and the supervisors had audited and paid the bill so certified, that the expense chargeable to the county had been determined as the law provided, and that, in the absence of fraud, the correctness of the certification and the propriety of the approval by the board of supervisors were not open to question by the sureties on the bond conditioned to pay the expense incurred if the district was not established.

VI. It is contended that appellants were only liable for the fair and reasonable cost of the preliminary survey under the plan as petitioned for, and that the case should have been submitted to the jury to determine the reasonable cost of such a survey. This contention is answered by the statute, requiring the bond to be for the payment of all costs and expenses incurred, and the conditions of the bond conforming to the statute. As we have seen, the board of supervisors and the engineer were not limited to the detailed plan found in the petition.

9. DRAINS: action on bond: unallowable defense.

VII. Error is assigned because, it is said, the action of the board was illegal, in that the member Marquis, who was disqualified by reason of owning land in the district, took part in

10. DRAINS: establishment and maintenance: interested but nondeciding vote.

the proceedings. In appellants' argument, however, it is said:

"We are not making claim that this of necessity would make the action of the board illegal. We think, before this could be claimed, his vote must have been the deciding vote."

This would, perhaps, relieve us from consideration of the error assigned. However, the record discloses that Marquis's vote was not the deciding vote in any action by the board in relation to the allowance or denial of the petition, and that, upon the filing of objection, he took no part in such proceedings. It appears that he did vote on the allowance of three claims, aggregating $69.68. If it should be conceded that recovery could not be had for the amount paid in settlement of these claims, still the amount of the other claims paid exceeded the amount of the bond.

Upon this record, it is needless to say that appellants' motion for a directed verdict was properly overruled. We discover no reversible error, and no question that should have been submitted to the jury. The judgment is—*Affirmed.*

FAVILLE, C. J., and EVANS, STEVENS, and DE GRAFF, JJ., concur.